
[Civ. No. 44719. First Dist., Div. One. Oct. 31, 1979.]

NAPA ASSOCIATION OF PUBLIC EMPLOYEES, LOCAL 614, SEIU AFL-CIO, Plaintiff and Appellant, v. COUNTY OF NAPA et al., Defendants and Respondents.

**COUNSEL**

Van Bourg, Allen, Weinberg & Roger and Stewart Weinberg for Plaintiff and Appellant.

Stephen W. Hackett, County Counsel, and Joseph C. Folkard, Deputy County Counsel, for Defendants and Respondents.

**OPINION**

**GRODIN, J.**—Napa Association of Public Employees (Local 614, SEIU AFL-CIO) is an employee organization which represents public

service employees and public service employee supervisors of the County of Napa for purposes of bargaining pursuant to the Meyers-Milias-Brown Act, Government Code section 3500 et seq. ■ ■■ ■ In August 1977 the association and the county entered into written memoranda of understanding specifying wages, hours, and working conditions for the two units.[1] For all purposes relevant to this proceeding, the two memoranda are identical. Each provided a grievance procedure, culminating in binding arbitration, to resolve disagreements over the "interpretation, application, or compliance with the terms of the Memorandum of Understanding," as well as matters involving disciplinary action or discharge.[2] The first step of the grievance procedure called for informal discussion between the grieving party and the immediate supervisor. If the grieving party was not satisfied with the solution at that step, then the grievance was to be reduced to writing and presented to successive levels of supervision, culminating (unless resolved along the way) with the county's personnel director. Within 10 days from the receipt of the decision of the personnel director, or his designee, the grieving party could request that the dispute be submitted to arbitration by either a tripartite arbitration panel or (through mutual agreement) a single arbitrator, whose decision would then be binding upon the parties.

Section 28.10(15) of both agreements provided, under the heading "Holidays," for "Four hours paid leave on the afternoon before Christmas Day or New Year's Day." On October 20, 1977, the county's personnel director advised the association's representative that county employees would not receive paid leave for Christmas and New Year's in 1977 because those holidays fell on a Sunday that year, and the county interpreted section 28.10(15) as not requiring paid leave for that reason. On December 12, 1977, the association filed grievances under both agreements, asserting the existence of a dispute over the interpretation of section 28.10(15) and requesting as relief that the employees receive four hours' paid leave in accordance with the agreements.

---

[1] A memorandum of understanding under the Meyers-Milias-Brown Act, once approved by the governing body, has the force of a binding agreement. (*Glendale City Employees' Assn., Inc.* v. *City of Glendale* (1975) 15 Cal.3d 328, 337-338 [124 Cal.Rptr. 513, 540 P.2d 609, cert. den. 424 U.S. 943 [47 L.Ed.2d 349, 96 S.Ct. 1411].) We assume, since no contention is made to the contrary, that the memoranda at issue in this case were approved by the county board of supervisors.

[2] The memoranda provided a somewhat broader definition of disputes subject to the grievance procedure but *not* to arbitration.

The county declined to consider the grievances on their merits or to proceed to arbitration on two grounds. One, subsequently abandoned,[3] was that the grievances were signed by employees rather than by a representative of the association. The other ground was that the grievances had not been timely filed.

The county relied, for this latter contention, upon the section of the agreement pertaining to the first step of the grievance procedure. That section provided in part: "Within ten (10) work days from the occurrence of the matter on which the grievance is based, or within ten (10) work days from the time the employee would reasonably be expected to know of the occurrence, the grieving party shall discuss the grievance with the immediate supervisor informally." It was the county's position that its announcement of intent on October 20, 1977, constituted an "occurrence" as to which a grievance could have been filed, and the grievance filed nearly two months later was, therefore, untimely.

The association thereupon filed a petition to compel arbitration pursuant to Code of Civil Procedure section 1281.2, which provides in relevant part as follows: "On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, *unless it determines that: [¶]  (a) The right to compel arbitration has been waived by the petitioner;...*" (Italics added.) The trial court, after hearing based on the pleadings and affidavits, entered findings in accord with the county's contentions as set forth in the preceding paragraph[4] and concluded therefrom that although an agree-

---

[3]The trial court ruled against the county on this ground, and the county did not appeal.

[4]The court found: "On October 20, 1977, Bill Carden [county personnel director] advised Mike Campbell [association business agent] that respondents interpreted section 28.10(15) of the respective memoranda of understanding as not requiring that county employees be accorded four hours paid leave at Christmas and New Year's in 1977. Carden told Campbell that county employees would not get such paid leave in 1977. The announcement of this decision by Carden to Campbell constituted an occurrence which authorized the petitioner to file a grievance." While the association filed an affidavit from Campbell which characterized the October 20 pronouncement as tentative and claimed the county's position became final only at a later date, less than 10 days prior to the filing of the grievances, there was clearly sufficient evidence to support the court's finding to the contrary. This evidence was in the form of an affidavit from Carden, which the association made no attempt to refute.

ment to arbitrate the controversy did exist, the association "has waived its right to compel arbitration of the grievances herein by failing to comply with the time limit within which the memoranda of understanding require that grievances be commenced." On that ground it denied the petition and the association appeals. (Code Civ. Proc., § 1294, subd. (a).) We reverse, on the ground that the trial court's conclusion of waiver was erroneous as a matter of law.

■ Under federal law applicable to collective bargaining agreements, questions of waiver and laches are normally for the arbitrator, rather than the court, to decide. (*John Wiley & Sons* v. *Livingston* (1964) 376 U.S. 543 [11 L.Ed.2d 898, 84 S.Ct. 909]; *Operating Engineers* v. *Flair Builders, Inc.* (1972) 406 U.S. 487 [32 L.Ed.2d 248, 92 S.Ct. 1710].) Since the agreement in this case involves a governmental employer excluded from coverage under the National Labor Relations Act, however, it is state law, and specifically section 1281.2 of the California arbitration statute which governs; and that section makes the question of waiver a matter for judicial determination.

■ Ordinarily, determination of waiver is said to be a question of fact, binding upon an appellate court if supported by substantial evidence. (*Sawday* v. *Vista Irrigation Dist.* (1966) 64 Cal.2d 833, 836 [52 Cal.Rptr. 1, 415 P.2d 816].) Here, however, the trial court determined that waiver existed as a legal conclusion from its determination that the association could have filed a grievance over the county's intended application of the disputed provision and that it failed to do so within 10 days. The question before us is whether that conclusion was correct as a matter of law. (*Doers* v. *Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 185 [151 Cal.Rptr. 837, 588 P.2d 1261].)

In support of the trial court's conclusion, the county points to cases in which courts have declared that where a contract provides that a demand for arbitration be filed within an agreed upon time, and one of the parties allows the agreed upon time to pass without making a demand, he waives his right to compel arbitration. There are, indeed, a number of opinions which contain such declarations, including *Freeman* v. *State Farm Mut. Auto. Ins. Co.* (1975) 14 Cal 3d 473, 483 [121 Cal. Rptr. 477, 535 P.2d 341]; *Butchers Union* v. *Farmers Markets* (1977) 67 Cal.App.3d 905, 909 [136 Cal.Rptr. 894]; *Gunderson* v. *Superior Court* (1975) 46 Cal.App.3d 138, 144 [120 Cal.Rptr. 35]; *and Jordan*

v. *Friedman* (1946) 72 Cal.App.2d 726, 727 [165 P.2d 728], but careful examination suggests that the declarations must be approached with caution. *Freeman* involved a *statutory* period of limitations applicable to the institution of arbitration under the uninsured motorist provision of an automobile insurance policy. *Butchers Union* involved a collective bargaining agreement to which federal law applied and as to which the waiver provisions of section 1281.2 were deemed by the court to be irrelevant. *Gunderson* involved the question whether defendants in a malpractice suit waived their right to compel arbitration by failing to assert it; no question of compliance with contractual time limits was involved. And *Jordan* involved an attempt by a general contractor to invoke an arbitration clause for the purpose of defending against a mechanic's lien filed by a subcontractor after the work had been completed, where the contract provided that any demand for arbitration should be filed with the architect (which was not done) and "'within a reasonable time after cause thereof and in no case later than the time of final payment ...'" (72 Cal.App.2d at p. 727.) None of these cases involves holdings to the effect that failure to invoke arbitration within the period provided for in a contract constitutes automatic waiver.

There is, in any event, another line of cases which suggests that waiver is a question involving consideration of the state of mind of the party who is alleged to have waived arbitration (whether or not the facts reflect an intention to relinquish or abandon the right to arbitrate) and the extent of prejudice, if any, to the party opposing arbitration (whether that party has been prejudiced by the actions relied upon as constituting waiver). (See *A. D. Hoppe Co.* v. *Fred Katz Constr. Co.* (1967) 249 Cal.App.2d 154, 161-163 [57 Cal.Rptr. 95, 25 A.L.R.3d 1162]; cf. *Martinez Typographical Union* v. *Siversun Corp.* (1967) 256 Cal.App.2d 255, 260 [63 Cal.Rptr. 760].) The Supreme Court recently endorsed this approach in *Doers* v. *Golden Gate Bridge etc. Dist., supra,* 23 Cal.3d 180, holding (in accordance with the federal rule) that the mere *filing* of a lawsuit does not waive contractual arbitration rights, as some courts had suggested, in the absence of evidence of *prejudice* arising from the *litigation* of the dispute. (*Id.,* at p. 188.) This conclusion followed, in the court's view, from the "strong public policy" favoring arbitration, a policy deemed to require that courts "'closely scrutinize any allegation of waiver of such favored right' (*Siedman & Seidman* v. *Wolfson, supra,* 50 Cal.App.3d 826, 835 [123 Cal.Rptr. 873]), and to 'indulge every intendment to give effect to such proceed-

ings' (*Pacific Inv. Co.* v. *Townsend* (1976) 58 Cal.App.3d 1, 9...; *Lewsadder* v. *Mitchum, Jones & Templeton, Inc.* (1973) 36 Cal.App.3d 255, 259....)" (*Id.,* at p. 189.)

■ ■■■■ Filing of a lawsuit in the face of an agreement to arbitrate constitutes, of course, a breach of that agreement; and if such an action does not constitute waiver in the absence of a showing of prejudice the proposition that failing to demand arbitration within specified time limits constitutes waiver per se seems doubtful at best.[5] (Cf. *New Linen Supply* v. *Eastern Environmental Controls, Inc.* (1979) 96 Cal. App.3d 810, 815-816 [158 Cal.Rptr. 251].)

Moreover, the proposition relied upon by respondents is distinguishable from the issue presented here. What is involved here is not a contractual "statute of limitations" with respect to the time within which *arbitration* must be demanded, but rather a time schedule with respect to the filing and processing of *grievances.* The distinction is one which has gained judicial acceptance elsewhere, particularly in New York, where courts have held that provisions pertaining to the time within which "claims" must be made should not be construed as limitations upon the right to seek arbitration. (See *Raphael* v. *Silverberg* (1949) 274 App.Div. 625 [86 N.Y.S.2d 421] (contractual provision requiring that "all claims must be made within ten days" held not to bar arbitration of claim made after expiration of 10-day period); *Tuttman* v. *Kattan, Talamas Export Corporation* (1948) 274 App.Div. 395 [83 N.Y.S.2d 651] (10-day clause held not to constitute a "statute of limitations" for the institution of arbitration proceedings).) These cases hold that the issue as to whether the claim period has been complied with, or if not whether the failure to comply should bar relief, is a question for the arbitrator, and not for the court.

---

[5]Even if that proposition were to be accepted, and the contractual time limitations viewed as a kind of statute of limitations to be applied by the court, the conclusion reached by the trial court is inconsistent with the presumptions declared in *Doers,* viewed in the context of normal contract principles. As appellant notes, where one party to a contract engages in what amounts to an anticipatory breach or repudiation, the other party may elect not to regard the anticipatory breach as the final breach, and if it does so elect the statute of limitations does not begin to run until the time of performance is due. (4 Corbin on Contracts (1951) § 989, p. 967; *Brewer* v. *Simpson* (1960) 53 Cal.2d 567, 593 [2 Cal.Rptr. 609, 349 P.2d 289]; *Ross* v. *Tabor* (1921) 53 Cal.App. 605, 613 [200 P. 971]; Rest., Contracts, § 322; 1 Witkin, Summary of Cal.Law (8th ed. 1973) Contracts, § 629, p. 536.) Of course, an arbitrator is not limited by normal contract principles and might reach a different conclusion based on the intent of the parties in negotiating the particular agreement.

We do not by any means suggest that a party to an arbitration agreement may with impunity ignore the time limitations which have been agreed upon for the processing of grievances. A party who asserts noncompliance with contractual time periods is of course free to make that assertion to an arbitrator, and we assume that the arbitrator will hold the parties to the essence of their bargain. It will be up to the arbitrator to decide whether the time limits have been complied with and, if not, what the consequences should be under the particular agreement which the parties negotiated. An arbitrator might, for example, decide as a matter of contract interpretation that the parties intended contractual time limitations to operate as a strict bar without regard to prejudice or mitigating factors, or he might consider such factors to be relevant in assessing the consequences of delay. Nor do we suggest that delay in filing a grievance can never rise to the level of waiver of arbitration for purposes of section 1281.2 (Cf. *Martinez Typographical Union* v. *Silverson Corp., supra,* 256 Cal.App.2d 255.) ■ All we hold is that the mere assertion of a party's failure to file a grievance within the time specified in the agreement, in the absence of an allegation and proof of intentional abandonment of the right to arbitrate or substantial prejudice resulting from the delay, is not of itself sufficient to raise a question of "waiver" within the meaning of that section, and that the trial court therefore erred in finding waiver as a matter of law.[6] Since it will be for the arbitrator to consider any claim which the county asserts with respect to the timeliness of the grievance, we refrain from deciding that issue. The judgment is reversed.

Racanelli, P. J., concurred.

**ELKINGTON, J.**—I concur in the result.

I am in full agreement with the conclusion that the parties' memorandum of understanding, although signed by the association alone, was for the third-party benefit of its county employee members who were entitled to enforce it. (See Civ. Code, § 1559; 1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 499, pp. 428-429.)

---

[6]The Supreme Court's recent opinion in *Davis* v. *Blue Cross of Northern California* (1979) 25 Cal.3d 418 [158 Cal.Rptr. 828, 600 P.2d 1060], does not affect this conclusion or its rationale. That case upholds the determination of a trial court that an insurance carrier, by rejecting the claims of its insureds without apprising them of their right to arbitration, and "having thereby compelled plaintiffs to resort to litigation" (*id.,* at p. 431) had waived its right to insist upon arbitration. The opinion makes refer-

As I read the record, the County of Napa had agreed with the association and its county employee members that "disagreements" over the "interpretation, application, or compliance with the terms of the Memorandum of Understanding" constituted arbitrable grievances.

Two such "disagreements," and thus "grievances," arose over the "interpretation" and "application" of the memorandum of understanding. The first was whether its required 10-day notice by an aggrieved employee was triggered by the informal October 20, 1977, advice to the association of the county's intent not to allow time off on the Friday afternoons before the year-end holidays falling on Sunday, *or* by the actual disallowance, more than two months later, of the contended-for time off. The second was whether the memorandum of understanding should be interpreted to allow such time off to the county's employees.

The county, having expressly agreed to arbitrate such "disagreements" and "grievances," was bound by its agreement and the superior court should have compelled their arbitration.

I withhold my approval of such parts of the controlling opinion which may be interpreted as *attenuating* the rule that where one of the parties to an arbitration agreement "allows the *agreed upon* time to pass without making a demand, he waives his right to compel arbitration." (Italics added.) I perceive as continuing, the general rule "that where a contract provides that arbitration may be demanded within a stated time, failure to make demand within that time constitutes a waiver of the right to arbitrate." (See *Freeman* v. *State Farm Mut. Auto. Ins. Co.,* 14 Cal.3d 473, 483 [121 Cal.Rptr. 477, 535 P.2d 341].)

A petition for a rehearing was denied November 30, 1979, and respondents' petition for a hearing by the Supreme Court was denied December 28, 1979.

---

ence by analogy to cases in which courts have found a waiver of the right to demand arbitration where "the petitioning party has unreasonably delayed in undertaking the procedure," citing *Sawday* v. *Vista Irrigation Dist., supra,* 64 Cal.2d 833, 836-837, and *Brunzell Constr. Co.* v. *Harrah's Club* (1967) 253 Cal.App.2d 764, 778-779 [62 Cal.Rptr. 505]. (*Id.,* at p. 426.) Nothing in the *Davis* opinion or in the opinions cited suggests that failure to comply with contractual time limits for the filing of grievances constitutes automatic waiver.