THE VILLAGE OF CARPENTERSVILLE, Plaintiff-Appellant, *v.* MAYFAIR CONSTRUCTION COMPANY, Defendant-Appellee.

Second District   No. 80-801

Opinion filed September 8, 1981.—Rehearing denied October 19, 1981.

Richard W. Husted, of Elgin, for appellant.

Howard Kamin and Dave Muschler, both of Chicago, and Robert F. Casey, of Geneva, for appellee.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

The Village of Carpentersville (Village) sought a determination in a declaratory judgment action that certain claims under a contract with the

Mayfair Construction Company (Mayfair) for reconstruction of waste treatment facilities in the Village were nonarbitrable. The trial court found that all claims were within the arbitration clause of the contract and ordered the parties to proceed to arbitration. The Village appeals. It contends that conditions precedent to arbitration in the contract were not met and that this issue must be decided by a court rather than the arbitrator; that procedural questions relating to arbitrability are similarly matters for the court; and that certain claims of Mayfair are not within the scope of the arbitration provisions of the contract. Mayfair, in addition to its counterarguments on the merits, contends that the Village's participation in the arbitration proceeding estops it from challenging arbitrability.

A construction contract was entered into on October 4, 1976, and work commenced on the project on October 14, 1976. Following various written change orders Mayfair made claims for payment for additional work outside the scope of the contract. These claims were submitted in writing to Warren and Van Praag, the architect-engineer for the project (Architect). The first of these claims was denied by the project engineer of the Architect. Mayfair then consulted with the Architect as to the procedure for the handling of claims. It was agreed between Mayfair and the Architect that the following provision in the contract:

"135.02 The demand for arbitration shall be made within thirty days after the date on which the Architect-Engineer rendered his written decision. However, no demand for arbitration shall be made until the earlier of (a) the date on which the Architect-Engineer has rendered a written decision; or (b) the tenth day after the parties have presented their evidence to the Architect-Engineer if he has not rendered a written decision before that date. Failure to demand arbitration within the said thirty day period shall result in the Architect-Engineer's decision being final and binding on the Owner and the Contractor"

would only apply where the Architect states that a decision is a written decision within the meaning of the section and that an arbitration demand must be made within 30 days of the written decision by the Architect. The Village did not challenge this interpretation.

Thereafter, from time to time, Mayfair notified the Architect of claims for extras and submitted evidence in support of the claims. The Architect gathered evidence and reviewed the evidence with the Village engineer prior to making a decision on such claims.

On April 25, 1978, a meeting was held at which representatives of the Village, the Architect and Mayfair were present. Following the meeting several pending claims were denied in a letter from the project engineer to Mayfair dated May 5, 1978. On May 17, 1978, the project engineer sent a letter to Mayfair which advised them that "it is agreed by the Village of

Carpentersville that the 30 days will begin on receipt of this letter." The initial demand for arbitration was filed by Mayfair on June 14, 1978. On June 23, 1978, the Village filed an answer in arbitration denying liability and also filed a counterclaim.

Mayfair added other claims to its arbitration demand after they were denied by the project engineer. Several of the claims were approved by the engineer but the change orders requested pursuant to a further provision of the contract, section 123.01, were rejected by the Village Board on April 2, 1979. The claims for which change orders were denied were added to the arbitration demand on April 3, 1979. A claim for the sums retained under the contract by the Village in the amount of $76,068.93 was also submitted to arbitration. Payment of the retainage had previously been approved by the Architect.

On July 23, 1979, the Village entered a special and limited appearance in the arbitration proceedings, objecting to the jurisdiction of the arbitrator. Before arbitration commenced, on August 23, 1979, the Village filed the declaratory judgment action, alleging that 15 of the 19 claims submitted to arbitration by Mayfair were not arbitrable. Mayfair filed a motion to dismiss, which was denied. Mayfair later asserted the affirmative defense of waiver and estoppel which was denied by the trial court. After trial, which primarily consisted of the submission of documentary evidence, the court found that all preconditions to arbitration had been met and denied the requested relief. It further appears of record that the trial court denied a stay to the Village and the arbitration has proceeded and has been completed before an arbitrator provided by American Arbitration Association but that no ruling has been made.

■■ We first address Mayfair's argument based on its claim of waiver and estoppel. While the Village argues that it consistently took the position that the claims were not arbitrable, the earliest documentation in the record is the "special appearance" filed over a year after its answers and counterclaim. Nevertheless, we conclude that the objections made prior to a hearing on the merits of the arbitration proceeding was sufficient to preserve the issue.

It has been generally held that a timely objection to arbitrability preserves the right to challenge the award after participating in the arbitration proceedings. (*Board of Education v. Champaign Education Association* (1973), 15 Ill. App. 3d 335, 341-42. See also Annot., 33 A.L.R.3d 1242 (1970).) In *Board of Education*, the Board contested arbitrability from the very beginning of the arbitration proceedings, including filing a motion to dismiss prior to the hearing on the merits. The court found that the plaintiff did not waive the objection to arbitrability by participating in the hearing. (15 Ill. App. 3d 335, 342.) In *Bisluk v. Town Realty, Inc.* (1980), 90 Ill. App. 3d 1039, plaintiffs appeared generally before the arbitrator and requested a continuance before filing

suit to enjoin arbitration. The court rejected defendant's contention that plaintiffs' involvement in arbitration proceedings waived the challenge to arbitrability. 90 Ill. App. 3d 1039, 1042.

■■ We conclude that the Village's objection to arbitrability was timely made by bringing this action prior to a hearing on the merits before the arbitrator. See *Clifton-Fine Central School Board of Education v. Wisner* (1977), 59 App. Div. 2d 50, 52, 397 N.Y.S.2d 208, 209.

The Village argues that the jurisdiction of the arbitrator is governed by the arbitration provisions of the contract (135.01-05) and the provisions relating to the status of the Architect-Engineer (136.02). It further argues that certain sections of the general conditions of the contract, relating to "Changes" (123.01-02), to the "Claims for Extra Compensation" (124.01) and to "Final Payment Estimate" (133.01-133.04) are preconditions to arbitrability and have not been met.

We first consider the Village's argument that there are conditions precedent to arbitrability which must be decided by the court. The sections in question, as pertinent, are the following:

"123   CHANGES
\* \* \*

123.02   Except in an emergency affecting the safety of life or property, no additional work shall be done or changes made, except by the Owner's signed order, countersigned by the Architect-Engineer, or a signed order from the Architect-Engineer stating that the Owner has ordered such additional work or change. No claim for compensation in addition to the Contract sum will be considered or paid unless so ordered"

and

"124.01   If the Contractor claims extra compensation on account of any instructions given by the Owner through the Architect-Engineer by means of drawings or otherwise, he shall so notify the Architect-Engineer in writing within ten (10) days after receiving said instructions and before proceeding with the work involved
\* \* \*."

Sections 123 and 124 concern the subject matter of the claims for extra compensation. They do not speak to arbitrability. Thus, the trial court properly concluded that they were not relevant to the issue of arbitrability.

The Village also argues that Mayfair did not comply with the provisions for the initiation of arbitration:

"135   ARBITRATION
135.01   All disputes, claims, or questions subject to arbitration under this Contract, except for claims which have been waived by the making and acceptance of final payment, shall be submitted to

arbitration upon written notice of either party to the Contract and a copy of same filed with the Architect-Engineer.

135.02 The demand for arbitration shall be made within thirty days after the date on which the Architect-Engineer rendered his written decision. However, no demand for arbitration shall be made until the earlier of (a) the date on which the Architect-Engineer has rendered a written decision; or (b) the tenth day after the parties have presented their evidence to the Architect-Engineer if he has not rendered a written decision before that date. Failure to demand arbitration within the said thirty day period shall result in the Architect-Engineer's decision being final and binding on the Owner and the Contractor.

\* \* \*

136.02 The Architect-Engineer shall render decisions on all claims of the Owner or Contractor, and on all other matters pertaining to the progress of the work or interpretations of the Contract Documents, within ten days after his receipt of written notice of same."

The question raised by this argument relates to whether the procedural issues, such as whether Mayfair complied with the time requirements and other procedures provided in the contract relative to the arbitration of disputes, are to be decided by the court or by the arbitrator. We have found no Illinois cases squarely confronting this issue.

The courts in other jurisdictions have not been uniform in their treatment. In *John Wiley & Sons, Inc. v. Livingston* (1964), 376 U.S. 543, 11 L. Ed. 2d 898, 84 S. Ct. 909, the United States Supreme Court held that procedural questions are for the arbitrator in a suit brought under section 301 of the Labor Management Relations Act. The court there stated:

"Questions concerning the procedural prerequisites to arbitration do not arise in a vacuum; they develop in the context of an actual dispute about the rights of the parties to the contract or those covered by it." (376 U.S. 543, 556-57, 11 L. Ed. 2d 898, 908, 84 S. Ct. 909, 918.)

The court concluded that it would only encourage delay to divide disputes into procedural and substantive aspects, each to be decided in a different forum. (376 U.S. 543, 556-57, 11 L. Ed. 2d 898, 908, 84 S. Ct. 909, 918.) The holding in *Wiley* has been uniformly applied in the Federal courts in cases of commercial arbitration. See, *e.g.*, *World Brilliance Corp. v. Bethlehem Steel Co.* (2d Cir. 1965), 342 F.2d 362, 365; *In re Conticommodity Services Inc.* (2d Cir. 1980), 613 F.2d 1222.

The majority of State courts have held that procedural questions, including contractual time limitations and the methods of initiating arbitration, are for the arbitrator. *Exber, Inc. v. Sletten Construction Co.*

(1976), 92 Nev. 721, 731-32, 558 P.2d 517, 523; *NAPA Association v. County of Napa* (1979), 98 Cal. App. 3d 263, 268, 159 Cal. Rptr. 522, 525; *Pettinaro Construction Co. v. Harry C. Partridge, Jr., & Sons* (Del. Ch. 1979), 408 A.2d 957, 963; *Bartley, Inc. v. Jefferson Parish School Board* (La. 1974), 302 So. 2d 280, 283; *Kardon v. Portare* (1976), 466 Pa. 306, 353 A.2d 368. Contra, see *Frederick Contractors, Inc., v. Bel Premedical Center, Inc.* (1975), 274 Md. 307, 316, 334 A.2d 526, 531.

Both parties cite different New York cases, which seem to support their positions. That State's highest court recently categorized prior case law and clarified the New York law on procedural arbitrability in *United Nations Development v. Norkin Plumbing* (1978), 45 N.Y.2d 358, 408 N.Y.S.2d 424, 380 N.E.2d 253. The court first distinguished between *statutory* conditions precedent and *contractual* conditions precedent. The former are always questions for the court while the latter are usually for the arbitrator. The court further distinguished contractual limitations which are expressly made conditions precedent to arbitration from those which are not, holding that the former should be decided by the court and the latter by the arbitrator, as a general rule.

■■ We conclude that the matters of timeliness and waiver and the other procedural matters in question should be decided by the arbitrator. We find no statutory precondition which would be for the court to decide based on the analysis which we find persuasive in *United Nations.* We likewise find no express condition precedent to arbitration in the contract. The procedural questions raised by the Village in this case are best answered by the arbitrator. Procedural questions often cannot be resolved without construing the contract as a whole and the transactions under the contract in light of the customs and practices of the industry. This task is peculiarly within the competence of the arbitrator, who presumably will hold the parties to the essence of their bargain. (See *NAPA Association v. County of Napa* (1979), 98 Cal. App. 3d 263, 270, 159 Cal. Rptr. 522, 526.) Whether the interpretation of the contract regarding when the 30-day limitation for the making of a demand for arbitration as agreed to between the Architect and Mayfair is a proper interpretation or one which the Village may not now challenge; and whether the Village by its conduct demonstrated a reliance upon strict compliance with sections 123 and 124 of the contract, as well as the other procedural matters raised, are properly questions for the arbitrator to decide.

The Village also asserts that the subject matter of the claim for retainage under section 133 of the contract is not within the arbitration clauses.

Section 133 provides in pertinent part:
"133   FINAL PAYMENT ESTIMATE
133.01   * * *

Final payment will be made to the Contractor for any amount remaining due upon the final inspection, testing and formal acceptance of the work by the Owner and the Architect-Engineer within thirty days after the final completion and acceptance of the work.

\* \* \*

133.03 Neither the final payment nor any part of the retained amount shall become due until the Contractor delivers to the Owner a complete release of all liens arising from this Contract, or receipts in full in lieu thereof, and, if required in either case, an affidavit that so far as he has knowledge or information, the releases and receipts include all labor, materials, and equipment for which a lien could be filed; the Contractor may, in case any subcontractor refuses to furnish a release or receipt in full, furnish a bond satisfactory to the Owner to indemnify him against any lien. If any lien remains unsatisfied after all payment [*sic*] are made, the Contractor shall refund to the Owner all moneys that the latter may be compelled to pay in discharging said lien(s), including all costs and a reasonable attorney's fee."

The Village contends that the Architect has no control over the release of the retained funds, that no claim for the retainage was filed with the Architect, and, thus, that there is no decision by the Architect to appeal to arbitration.

■■ However, the contract provides that the Architect-Engineer "shall render decisions \* \* \* on all other matters pertaining to the progress of the work" (section 136.02), and provides for arbitration if the Architect-Engineer fails to render a decision (section 135.02). Mayfair argues that the determination of whether the retainage should be paid is a matter "pertaining to the progress of the work," and is thus arbitrable. We agree. The questions raised by the Village relate to the matter of procedural arbitrability not subject matter arbitrability. The narrow issue involved in this part of the Village's argument is whether there is an agreement to arbitrate the particular issue, the matter of the retainage. (*School District No. 46 v. Del Bianco* (1966), 68 Ill. App. 2d 145, 156.) As noted in *Del Bianco*, a party may not choose between the judicial or arbitration form if there is an agreement to arbitrate. (68 Ill. App. 2d 145, 156.) We conclude that the retainage issue essentially relates to the progress of the work and is thus subject to arbitration under the contract. See *Roosevelt University v. Mayfair Construction Co.* (1975), 28 Ill. App. 3d 1045, 1051.

Certain claims of Mayfair were allowed by the Architect who requested the Village to issue change orders to pay Mayfair. However, the Village refused to issue the orders. The Village also argues in this connection that since Mayfair did not demand arbitration until the Village

refused to issue the orders, Mayfair improperly included in the arbitration the items on which it had received a favorable decision of the Architect. Although it may seem anomalous to allow a successful party to demand arbitration, the contract does not restrict arbitrability to parties whose claims are denied. The only question for the court is whether the subject matter of the claim is within the scope of the arbitration provisions. (See *Stuart-Dean Co. v. Lurie* (1979), 69 Ill. App. 3d 844, 846.) Further, as a policy matter it is preferable, and in the interest of judicial economy, to allow all arbitrable claims to go to arbitration rather than to require Mayfair to sue the Village for breach of contract.

■■ We therefore conclude that all of the procedural questions raised by the Village are for the arbitrator; and that the subject matter of the claims is within the scope of arbitrability. The judgment is therefore affirmed.

Affirmed.

LINDBERG and UNVERZAGT, JJ., concur.