AMALGAMATED TRANSIT UNION, LOCAL 900, Plaintiff-Appellee and Cross-Appellant, v. SUBURBAN BUS DIVISION OF THE REGIONAL TRANSPORTATION AUTHORITY, Defendant-Appellant and Cross-Appellee.

Second District    No. 2—93—1397

Opinion filed May 19, 1994.

Frank M. Pawlak, Michael B. Roche, Joseph J. Stevens, and Peter C. Warman, all of Schuyler, Roche & Zwirner, P.C., of Chicago (Jeffrey E. Schiller, of counsel), for appellant.

J. Peter Dowd and Linda Wyetzner, both of Dowd & Bloch, of Chicago (Robert E. Bloch, of counsel), for appellee.

JUSTICE COLWELL delivered the opinion of the court:

Plaintiff, Amalgamated Transit Union, Local 900 (Union), commenced this action to compel arbitration of a grievance with Suburban Bus Division of the Regional Transportation Authority (Pace). The circuit court of Lake County entered an order compelling arbitration and denying motions for sanctions filed by both parties. Pace appeals from the order compelling arbitration and the Union cross-appeals from the court's order denying its request for sanctions. We affirm.

Pace is a suburban bus company which provides public mass transit services pursuant to the Regional Transportation Authority Act (70 ILCS 3615/3A.01 *et seq.* (West 1992)). The Union represents a bargaining unit at Pace which is comprised of bus operators, shop employees, and some office clerks. The relationship between Pace and the Union is subject to a collective bargaining agreement (Agreement) which establishes the terms and conditions of employment for Union members at the Pace North Division facility. Article 4 of the Agreement provides a three-step grievance procedure culminating in arbitration:

"All grievances of employees covered by this Agreement relating to discipline, discharge, rate of pay, hours of labor or working conditions shall be adjusted in the following manner:

1. The grievance must be submitted in writing to the Superintendent of Operations or his representative and the Union or the Maintenance Director or his representative within ten (10) calendar days of occurrence. *** The Superintendent of Operations or the Maintenance Director will reply to the Union in writing within ten (10) calendar days of receipt.

2. If the Union is not satisfied with the answer of Pace in Step 1 above within five (5) working days after receipt of Pace's reply, the Union may submit the grievance to the Division Manager in writing for the Division Manager's review and determination. The Division Manager or his designee must respond to the Union within five (5) working days after receipt of the Union's request.

3. In the event the parties do not settle the grievance in Step 2 either party may submit the grievance to arbitration within thirty (30) calendar days of the Division manager's decision."

The grievance at issue here concerns whether a certain Pace employee, Kathleen Sheehan, performs work reserved to the Union under the Agreement and therefore must pay Union dues. This dispute arose in 1992 when Sheehan was assigned duties that Pace considered to be beyond the scope of work reserved to the Union under the Agreement. Sheehan stopped paying Union dues in October 1992.

Robert Bloch, attorney for the Union, sent correspondence regarding Sheehan to Joseph Stevens, Pace's attorney, in September 1992. Stevens sent Bloch a letter dated January 5, 1993, stating that Sheehan occupied a non-Union position. Bloch filed a grievance on behalf of the Union on January 6, 1993, which he stated was a response to the January 5 letter from Stevens. The grievance requested that Pace either: (1) cease assigning Sheehan to bargaining unit duties, (2) return Sheehan to the bargaining unit and notify her of same, or (3) discharge Sheehan for the nonpayment of dues as required under article 1 of the Agreement. Bloch forwarded this grievance to Stevens and it was received by him on or about January 14, 1993.

Stevens responded in a letter dated January 22, 1993, that the grievance failed to comply with the grievance process specified in the Agreement in that the grievance should have been submitted to the superintendent of operations of the Pace north division. Stevens stated that he had never consented to accept service on behalf of Pace and that the grievance was untimely. In a letter dated January 27, 1993, Bloch responded that the grievance was properly served on/ Stevens as a "representative" of the superintendent of operations as provided in the Agreement. Bloch requested in that letter that the grievance be processed to the second step of the grievance procedure. Bloch stated that he recognized that Pace had preserved its contentions as to service and timeliness for presentation to an arbitrator.

In a letter dated February 2, 1993, Stevens reiterated that the Union had failed to proceed in a manner consistent with the Agreement. Stevens also stated that Bloch's January 27 letter did not comply with step 2 of the grievance procedure since it was not submitted to the division manager. Bloch responded in a letter dated February 23, 1993, in which he purported to comply with step 3 of the grievance procedure by submitting the grievance to arbitration. Stevens responded the next day by refusing the arbitration demand and restating that the Union had failed to comply with the Agreement's grievance process and time limits.

The Union brought this action under section 2 of the Uniform Arbitration Act (710 ILCS 5/2 (West 1992)), seeking an order compelling arbitration of the grievance at issue. Pace denied the material allegations of the Union's complaint. Pace filed a motion for summary judgment supported by affidavits from the division manager at Pace North and Stevens. Pace argued that the Union had failed to comply with steps 1 and 2 of the grievance process contained in the Agreement. The Union did not file any controverting affidavits or ev-

identiary material in the circuit court. Pace also filed a motion for sanctions against the Union for commencing this action.

The Union filed a reply to both motions and a countermotion for sanctions against Pace for the filing of harassing motions without sufficient legal foundation, and for the purpose of causing harassment and needless expense to the Union. On November 4, 1993, the trial court found that Pace had admitted in its answer all necessary facts to compel the parties to proceed to arbitration. Although there is no verbatim transcript of this hearing, the parties stipulated to an order certifying a report of proceedings. The trial court found that Pace's objections to arbitration were procedural and must be referred to the arbitrator. The trial court ordered the parties to proceed to arbitration. The court noted that Pace's motions for summary judgment and sanctions had not been previously filed with the court as Pace had indicated on its notices of motion. Therefore, the trial court treated Pace's summary judgment motion as a motion for leave to file a motion for summary judgment and then denied the motion as moot. The trial court also denied both parties' motions for sanctions. This appeal followed.

We first note that this court has jurisdiction in this interlocutory appeal under Supreme Court Rule 307(a)(1) (134 Ill. 2d R. 307(a)(1)), because a motion to compel arbitration is analogous to a motion for injunctive relief. (*Nagle v. Nadelhoffer, Nagle, Kuhn, Mitchell, Moss & Saloga, P.C.* (1993), 244 Ill. App. 3d 920, 924.) The sole issue before this court for review as an interlocutory appeal is whether there was a showing sufficient to sustain the order of the trial court granting the Union's motion to compel arbitration. See *Barter Exchange, Inc. v. Barter Exchange, Inc.* (1992), 238 Ill. App. 3d 187, 191.

The trial court determined this case without evidentiary hearings and without making any findings as to any factual issues. Accordingly, the trial court's finding that the grievance at issue was arbitrable was made as a matter of law and is reviewable *de novo. Manella v. First National Bank & Trust Co.* (1988), 173 Ill. App. 3d 436, 442.

Pace contends that the trial court erred in compelling arbitration of the parties' dispute since the Union failed to comply with the grievance process outlined in the Agreement. Specifically, Pace argues that, by communicating directly with Stevens, the Union failed to complete steps 1 and 2 of the grievance process outlined in article 4. Step 1 provides that the grievance must be submitted to the superintendent of operations or his representative or the maintenance director or his representative, and step 2 provides that if the Union is not satisfied with Pace's answer in step 1, the Union may submit the grievance to the division manager. Pace argues that, in

spite of these requirements, the Union never attempted to submit the grievance here to Pace management for discussion.

Pace also contends that the Union's attempt to process the grievance was grossly untimely. Article 4 of the Agreement requires that the Union file a grievance within 10 days after the occurrence giving rise to the grievance. Pace notes that, although Sheehan was assigned to the alleged Union work in 1992 and stopped paying dues in October of that year, the Union's first attempt to assert a grievance was not until January 1993.

Pace argues that the Union's compliance with the Agreement's grievance process is a condition precedent to Pace's obligation to arbitrate. Pace notes that step 3 of the grievance process clearly provides that *"[i]n the event the parties do not settle that grievance in Step 2,* either party may submit the grievance to arbitration within thirty (30) calendar days of the Division manager's decision." (Emphasis added.)

A condition precedent is one which must be performed either before a contract becomes effective or which is to be performed by one party to an existing contract before the other party is obligated to perform. (*Cencula v. Keller* (1989), 180 Ill. App. 3d 645, 655; see also *In re Estate of Albrecht* (1975), 27 Ill. App. 3d 839, 841.) Pace contends that the Union would be required to fulfill the requirements in steps 1 and 2 as conditions precedent since arbitration contracts are interpreted in the same manner and under the same rules as are all other contracts. *J&K Cement Construction, Inc. v. Montalbano Builders, Inc.* (1983), 119 Ill. App. 3d 663, 669.

Pace refers to several cases as supportive of its position that the Union's compliance with the initial steps of the grievance process was a condition precedent to arbitration. See, *e.g., Grocery & Food Products Warehouse Employees Union, Local No. 738 v. Thomson & Taylor Spice Co.* (N.D. Ill. 1963), 214 F. Supp. 92, 95 ("Where the parties contract to submit grievances to arbitration only after certain conditions precedent are performed, this Court may not require submission prior to the performance of such conditions"); *In re Arbitration Between Burnished Metal Corp. & Kamen* (1983), 96 A.D.2d 704, 466 N.Y.S.2d 778 (trial court properly concluded that consultations by the shop steward and the union representative with the employer constituted conditions precedent to the resort to arbitration and were not merely procedural stipulations to be observed in the conduct of an arbitration proceeding).

Pace also cites several Illinois cases it admits are not directly on point but allegedly support its position on this issue. See *Godare v. Sterling Steel Casting Co.* (1981), 103 Ill. App. 3d 46 (court held that

plaintiff's compliance with the dispute resolution mechanism in claiming disability benefits was a condition precedent to the employer's duty to pay benefits); *Albrecht*, 27 Ill. App. 3d at 840 (deceased husband's completion of an application for insurance before his death was held to be a condition precedent to any obligation on the part of the insurance company to pay the administratrix, thus deceased husband's failure to complete the application left him uninsured even though his employer had already paid the policy premiums); *Kilianek v. Kim* (1989), 192 Ill. App. 3d 139 (court held that issuance of certificate for payment on construction contract was a condition precedent to the owner's obligation to make final payment).

Pace contends that the Union violated the conditions precedent in the grievance process here and that procedural matters were not involved. Pace notes that this court has previously determined that issues regarding conditions precedent are for the court to decide while procedural matters like timeliness and waiver are within the province of arbitrators. (*Village of Carpentersville v. Mayfair Construction Co.* (1981), 100 Ill. App. 3d 128, 133.) Accordingly, Pace concludes that the Union's failure to comply with steps 1 and 2 of the Agreement was an issue for the courts, not arbitrators, to resolve.

In *Village of Carpentersville*, the plaintiff argued that (1) the contract contained conditions precedent to arbitrability which must be decided by the court, and (2) procedural issues, such as whether defendant complied with the time requirements and other procedures provided in the contract relative to the arbitration of disputes, are to be decided by the court. The contract at issue provided that the demand for arbitration was to be made within 30 days after the date on which the architect-engineer rendered his written decision. (*Village of Carpentersville*, 100 Ill. App. 3d at 131-32.) This court concluded:

> "[M]atters of timeliness and waiver and the other procedural matters in question should be decided by the arbitrator. We find no statutory precondition which would be for the court to decide ***. We likewise find no express condition precedent to arbitration in the contract. The procedural questions raised by the Village in this case are best answered by the arbitrator. Procedural questions often cannot be resolved without construing the contract as a whole and the transactions under the contract in light of the customs and practices of the industry. This task is peculiarly within the competence of the arbitrator, who presumably will hold the parties to the essence of their bargain." *Village of Carpentersville*, 100 Ill. App. 3d at 133.

Pace reads *Village of Carpentersville* to hold that the procedural questions therein were to be decided by the arbitrator only because it found "no express condition precedent to arbitration in the contract." Pace claims that the instant case contains conditions precedent in that the right to arbitrate does not exist at all unless and until prior compliance by the Union with steps 1 and 2 of the grievance process has failed to resolve the parties' dispute. Accordingly, Pace contends that the issue of the Union's compliance with these conditions precedent is for the court to decide.

The Union also relies primarily on *Village of Carpentersville* in arguing its position that the objections raised by Pace in these proceedings are procedural objections, not conditions precedent, and therefore are to be determined by the arbitrator. The trial judge here also stated that he based his decision to compel arbitration on *Village of Carpentersville*. The Union interprets this case to hold that only express contractual conditions precedent to arbitration are resolved by the court. The Union maintains that the steps in the grievance process here do not constitute express conditions precedent but rather involve procedural issues which are best resolved by an arbitrator who would construe the contract as a whole in light of the customs and practice of the industry and would "hold the parties to the essence of their bargain." *Village of Carpentersville*, 100 Ill. App. 3d at 133.

The question before this court, therefore, is whether the Union's alleged failure to complete properly the grievance process or file timely the grievance constitutes a procedural issue or a condition precedent. We note that other cases have varied on this general issue. See, *e.g., Robbins v. Chipman Trucking, Inc.* (7th Cir. 1988), 866 F.2d 899 (issue of timeliness of employer's request for arbitration of withdrawal liability dispute was for district court rather than arbitrator, despite strong policy favoring arbitration). But see *Ure v. Wangler Construction Co.* (1992), 232 Ill. App. 3d 492, 499 ("Where arbitrability is not contested, questions concerning timeliness and waiver in asserting contractual rights are for arbitrators to decide, rather than courts"); *Board of Education of Posen-Robbins School District No. 143¹/₂ v. Daniels* (1982), 108 Ill. App. 3d 550 (questions involving contractual time limitations are for the arbitrators, not the courts, to decide).

■ We believe those cases which hold that timeliness is a procedural issue for the arbitrator to decide are more persuasive. As noted in *Daniels* and *Village of Carpentersville*, questions involving contractual time limitations usually require construing the contract in light of the customs and practices of the industry, a task peculiarly

within the competence of the arbitrator. (*Daniels*, 108 Ill. App. 3d at 555; *Village of Carpentersville*, 100 Ill. App. 3d at 133.) We also find persuasive the language in *Village of Carpentersville* which distinguished contractual limitations that are expressly made conditions precedent to arbitration from those which are not, holding that the former should be decided by the court and the latter by the arbitrator, as a general rule. 100 Ill. App. 3d at 133.

Admittedly, *Village of Carpentersville* lacks instruction as to the exact distinction between a condition precedent and a procedural requirement. Nonetheless, we do not believe that the facts here indicate that the Union failed to perform a condition precedent. Pace does not contest the fact that it received the grievance, it only argues that the grievance was delivered to the wrong person and was not timely. This presents procedural questions. We believe that where, as here, the Union has submitted a grievance to Pace's attorney and proceeded in what may or may not have been the correct grievance process, the questions on this issue are best answered by the arbitrator. Although the issue as to whether the Union properly submitted its correspondence to Stevens remains unsettled, we note that Pace was aware of the Union's grievance and would be able to prepare its own arguments accordingly. We affirm the trial court's judgment compelling Pace to arbitrate these issues.

We note that our holding also comports with public policy since arbitration is a favored means of dispute resolution and is regarded as an effective cost-efficient method of resolving disputes. (*Johnson v. Baumgardt* (1991), 216 Ill. App. 3d 550, 555-56.) The dispute here concerns the Union's alleged failure to follow the proper procedures for invoking arbitration of an issue which Pace concedes is substantively arbitrable. We believe public policy favors the resolution of this procedural issue by the arbitrator, therefore avoiding additional costly litigation.

The Union alleges in its cross-appeal that the trial court abused its discretion in denying the Union's countermotion for sanctions. Pace had initially filed a motion for sanctions, alleging that the Union's petition to compel arbitration caused needless litigation when there was no viable basis for pursuing its claim. The trial court denied both parties' motions for sanctions apparently without comment. The Union contends on appeal that Pace knew of the *Village of Carpentersville* decision and therefore was on notice that the Union's application rested on good authority before Pace filed its motion for sanctions. The Union argues that Pace's motions for summary judgment and for sanctions were sanctionable not only because they lacked merit, but also because they were plainly intended to

harass the Union and cause unnecessary delay in a proceeding which should have been quick and inexpensive.

Supreme Court Rule 137 enables a trial court to impose sanctions, including reasonable attorney fees against a party or an attorney who violates its requirements. (134 Ill. 2d R. 137.) The rule serves to penalize the litigant or attorney who pleads false or frivolous matters, or who brings suit without any basis in the law. (*In re Estate of Wernick* (1989), 127 Ill. 2d 61, 77; *Edward Yavitz Eye Center, Ltd. v. Allen* (1993), 241 Ill. App. 3d 562, 569.) Whether to impose sanctions under Rule 137 is a matter for the trial court's discretion, and we will not reverse the trial court's decision absent an abuse of discretion. *Allen*, 241 Ill. App. 3d at 568-69.

■ We conclude that the trial court did not abuse its discretion in denying the Union's motion for sanctions. Both parties rely on *Village of Carpentersville* for support. Admittedly, some of the language in that decision is capable of different interpretations, although we believe the Union's interpretation to be correct. Pace took the position that steps 1 and 2 in the grievance process constituted conditions precedent to Pace's obligation to arbitrate. As in *Village of Carpentersville*, we hold that the Agreement here contained "no express condition precedent to arbitration" which would present questions for the court; however, we acknowledge that Pace's position was warranted by other existing case law. We also conclude that Pace's motions were not interposed for any improper purpose but rather were intended to address Pace's objections to arbitrating the dispute when it felt that the Union did not properly comply with the terms of the parties' Agreement. Accordingly, we affirm the trial court's decision denying the Union's motion for sanctions.

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

QUETSCH and PECCARELLI, JJ., concur.