MENARD COUNTY HOUSING AUTHORITY, Plaintiff-Appellee, v. JOHNCO CONSTRUCTION, INC., Defendant-Appellant.

Fourth District   No. 4—03—0273

Argued May 13, 2003.—Opinion filed July 18, 2003.

James L. Hafele (argued), of James L. Hafele & Associates, P.C., of Peoria, for appellant.

Patrick J. O'Hara (argued), of Cavanagh & O'Hara, of Springfield, for appellee.

JUSTICE COOK delivered the opinion of the court:

Defendant, Johnco Construction, Inc. (Johnco), appeals an order of the Menard County circuit court denying Johnco's motion to stay and to compel arbitration pursuant to the Uniform Arbitration Act (710 ILCS 5/1 through 23 (West 2000)). We reverse and remand.

In March 2000, the Menard County Housing Authority (MCHA) hired Johnco to renovate an MCHA public housing building. The contract provided that Johnco would complete the renovations within 365 days with exceptions for unforseen or unavoidable causes for delay. The contract included a liquidated-damages provision, which provided that liquidated damages would be assessed at a rate of $100 per calendar day for every day that Johnco took to finish the renovations beyond 365 days. The contract also had an optional arbitration clause. It provided that when the contracting officer made a final decision regarding a claim arising under or relating to the contract, Johnco could appeal that decision to an arbitrator or mediator, but it had to do so within 30 days of the contracting officer's decision. Finally, the contract provided that Johnco would "proceed diligently" with performance of the contract, even while claims relating to the contract were pending.

On November 15, 2001, Anne Smith, who was the executive director of MCHA and listed as the contracting officer in the contract, sent a letter to Johnco informing it that $20,400 in liquidated damages had accrued because of the delay in finishing the renovations. Johnco had finished the actual physical renovations to MCHA's building, but it took longer than 365 days. MCHA offered to forego 10% of the liquidated damages if Johnco would finalize the project by producing certain close-out papers pursuant to the contract, such as lien releases from subcontractors, architect-requested documents, and a final pay request, by December 10, 2001. MCHA needed these close-out documents to administratively complete the project and be able to secure funding for the project.

Johnco responded with a letter dated November 16, 2002, which generally alleged that the delays had not been Johnco's fault and that no liquidated damages should have accrued. According to Johnco, the delay occurred because MCHA had failed to disclose that the heating system in the building made it impossible to do any renovations in the winter and still have heat for the tenants of the building. Johnco had anticipated being able to work during the winter months when it set a completion date for the project. Johnco did not provide the requested close-out papers.

On May 3, 2002, MCHA's attorney mailed a letter to Johnco again requesting that Johnco produce the previously requested close-out papers. The letter acknowledged Johnco's argument that the delay in completing the renovations was not Johnco's fault but stated that "[MCHA] has previously taken into account the substance of said protest in modifying its assessment of liquidated damages and is not amenable to further adjustment." The letter finished by saying that if the requested close-out documents were not produced, MCHA would pursue legal proceedings to force Johnco to produce the documents.

Johnco responded to the May 3, 2002, letter with a letter addressed to Anne Smith dated May 16, 2002. This letter generally reiterated Johnco's claim that the delays in finishing the renovations were not Johnco's fault and that any assessment of liquidated damages was unwarranted. The letter ended with the following paragraph:

> "Please review and advise what course of action you want to take. We are prepared for anything. If MRA and MCHA want to pursue legal action, so be it. We are very optimistic that somewhere, someone in the legal system will be open-minded, reasonable, and understanding."

Johnco did not produce the requested close-out documents.

MCHA filed its complaint for declaratory judgment and for further relief on June 26, 2002. The complaint sought a declaration that Johnco was obligated pursuant to the contract to provide the close-out papers and an order compelling Johnco to provide those documents. Johnco responded with a motion to stay and to compel arbitration pursuant to the contract's arbitration provision.

The trial court denied Johnco's motion to compel arbitration, finding that Johnco could no longer invoke the arbitration provision in the contract. The contract provides that the "Contracting Officer" will decide any claims made by either party and:

> "The Contracting Officer's decision shall be final unless the Contractor [(Johnco)] (1) appeals in writing to a higher level in the PHA/IHA in accordance with the PHA's/IHA's policy and procedures, (2) refers the appeal to an independent mediator or arbitra-

tor, or (3) files suit in a court of competent jurisdiction. Such appeal must be made within [30 days] after receipt of the Contracting Officer's decision."

The court found the May 3, 2002, letter from MCHA's attorney rejecting Johnco's claim that it was not liable for liquidated damages was a final decision of the contracting officer and that 30 days had passed without Johnco referring the appeal to an arbitrator. Therefore, pursuant to the terms of the arbitration provision itself, Johnco could no longer invoke arbitration. Johnco appeals.

■ A motion to compel arbitration is treated as a complaint for injunctive relief, and a denial of that motion is reviewed pursuant to Supreme Court Rule 307(a)(1) (134 Ill. 2d R. 307(a)(1)). *Yandell v. Church Mutual Insurance Co.*, 274 Ill. App. 3d 828, 830, 654 N.E.2d 1388, 1389 (1995). Rule 307(a)(1) allows an interlocutory appeal of an order granting or denying injunctive relief. See 134 Ill. 2d R. 307(a)(1). "The sole issue before the appellate court on an interlocutory appeal is whether a sufficient showing was made to sustain the order of the trial court denying the motion to compel arbitration." *Yandell*, 274 Ill. App. 3d at 830, 654 N.E.2d at 1389. Thus, the standard of review in an interlocutory appeal is whether the trial court abused its discretion. *Yandell*, 274 Ill. App. 3d at 831, 654 N.E.2d at 1389.

■ The issue whether a contract to arbitrate exists must be determined by the court, not an arbitrator. "[I]f the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised ***." 710 ILCS 5/2(a) (West 2000). Although arbitration is a favored method of dispute resolution, the parties to an agreement are bound to arbitrate only those issues they have agreed to arbitrate, as shown by the clear language of the agreement and their intentions expressed in that language. *Salsitz v. Kreiss*, 198 Ill. 2d 1, 13, 761 N.E.2d 724, 731 (2001); *Rauh v. Rockford Products Corp.*, 143 Ill. 2d 377, 387, 574 N.E.2d 636, 641 (1991).

■ Where there is an arbitration agreement, but it is unclear whether the subject matter of the dispute falls within the scope of the arbitration agreement, the question of substantive arbitrability should initially be decided by the arbitrator. *Donaldson, Lufkin & Jenrette Futures, Inc. v. Barr*, 124 Ill. 2d 435, 447-48, 530 N.E.2d 439, 445 (1988). This is consistent with the purpose of arbitration, employing the arbitrator's skilled judgment to resolve the ambiguity. *Donaldson*, 124 Ill. 2d at 448, 530 N.E.2d at 445. Where an arbitrator decides the question of arbitrability in the first instance, the circuit court must still review the arbitrator's decision *de novo*. *Salsitz*, 198 Ill. 2d at 13-14, 761 N.E.2d at 731; *Donaldson*, 124 Ill. 2d at 448, 530 N.E.2d at

445 (recognizing that initially deferring to the arbitrator in unclear cases may occasionally hinder some of the reasons for arbitration, speed and inexpense). Were this not so, "a party would be bound by the arbitration of disputes he has not agreed to arbitrate and would be left with only a court's deferential review of the arbitrator's decision on the question of arbitrability." *Salsitz*, 198 Ill. 2d at 14, 761 N.E.2d at 731.

■ It has been held that the existence of a condition precedent to arbitration is a question for the court to decide, as opposed to procedural issues, which are best resolved by an arbitrator who would construe the contract as a whole in light of the customs and practice of the industry and would hold the parties to the essence of their bargain, a task peculiarly within the competence of the arbitrator. *Amalgamated Transit Union, Local 900 v. Suburban Bus Division of the Regional Transportation Authority*, 262 Ill. App. 3d 334, 340-41, 634 N.E.2d 469, 474 (1994). It is recognized, however, that the exact distinction between a condition precedent and a procedural requirement is difficult to define. "Admittedly, *Village of Carpentersville* lacks instruction as to the exact distinction \*\*\*." *Amalagamated*, 262 Ill. App. 3d at 341, 634 N.E.2d at 474 (discussing *Village of Carpentersville v. Mayfair Construction Co.*, 100 Ill. App. 3d 128, 133, 426 N.E.2d 558, 562-63 (1981)).

The question in *Amalgamated* was whether a grievance, which was required to be submitted to the employer's superintendent of operations, was properly submitted instead to the employer's attorney. There was another question whether the grievance was submitted, as required, "within ten (10) calendar days of occurrence," when the employee stopped paying dues in October 1992 and no grievance was asserted until January 1993. *Amalgamated*, 262 Ill. App. 3d at 335, 634 N.E.2d at 471. The court held that these issues should be arbitrated:

> "[The employer] does not contest the fact that it received the grievance, it only argues that the grievance was delivered to the wrong person and was not timely. This presents procedural questions. We believe that where, as here, the Union has submitted a grievance to [the employer's] attorney and proceeded in what may or may not have been the correct grievance process, the questions on this issue are best answered by the arbitrator. Although the issue as to whether the Union properly submitted its correspondence to [the employer's attorney] remains unsettled, we note that [the employer] was aware of the Union's grievance and would be able to prepare its own arguments accordingly." *Amalgamated*, 262 Ill. App. 3d at 341, 634 N.E.2d at 475.

The trial court made at least two findings of fact regarding arbitrability that, under the particular circumstances of this case, would have been better addressed to an arbitrator: (1) Did the MCHA send a letter from its "contracting officer," within the meaning of the contract, so as to start the 30-day period within which Johnco needed to seek arbitration? And (2) if such a letter was sent (in either November 2001 or May 2002), did Johnco forfeit its right to arbitration by failing to take timely action? Under the circumstances, we agree with the following from *Amalgamated*:

> "We believe those cases which hold that timeliness is a procedural issue for the arbitrator to decide are more persuasive. As noted in [*Board of Education of Posen-Robbins School District No. 143½ v. Daniels*, 108 Ill. App. 3d 550, 555, 439 N.E.2d 27, 31 (1982),] and *Village of Carpentersville*, questions involving contractual time limitations usually require construing the contract in light of the customs and practices of the industry, a task peculiarly within the competence of the arbitrator." *Amalgamated*, 262 Ill. App. 3d at 340-41, 634 N.E.2d at 474.

In *Village of Carpentersville*, there was contract language similar to that in the present case: " 'The demand for arbitration shall be made within thirty days after the date on which the Architect-Engineer rendered his written decision. \*\*\* Failure to demand arbitration within the said thirty[-]day period shall result in the Architect-Engineer's decision being final and binding on the Owner and the Contractor.' " *Village of Carpentersville*, 100 Ill. App. 3d at 129, 426 N.E.2d at 560. The contractor and the architect agreed that provision would only apply "where the Architect states that a decision is a written decision within the meaning of the section and that an arbitration demand must be made within 30 days of the written decision by the Architect." *Village of Carpentersville*, 100 Ill. App. 3d at 129, 426 N.E.2d at 560. The court held that whether that interpretation was proper or one that the village may not now challenge was a procedural matter for the arbitrator to decide. *Village of Carpentersville*, 100 Ill. App. 3d at 133, 426 N.E.2d at 563. "We conclude that the matters of timeliness and waiver and the other procedural matters in question should be decided by the arbitrator. We find no statutory precondition which would be for the court to decide \*\*\*." *Village of Carpentersville*, 100 Ill. App. 3d at 133, 426 N.E.2d at 562. "We likewise find no express condition precedent to arbitration in the contract." *Village of Carpentersville*, 100 Ill. App. 3d at 133, 426 N.E.2d at 562.

■ There are some differences between *Village of Carpentersville* and the present case. In *Village of Carpentersville*, the village sought a declaration that certain claims were not arbitrable. In the present

case, MCHA sought an order compelling Johnco to provide documents. It could be argued that Johnco is attempting to delay proceedings, by not insisting upon arbitration until the village has begun a court action, after declaring that if "MCHA want[ed] to pursue legal action, so be it." There is something to Johnco's argument, however, that to begin the running of the 30-day period, the contracting officer's decision had to make it clear that it had that effect. *Village of Carpentersville* is supportive of the suggestion that that is a custom and practice of the industry. *Village of Carpentersville*, 100 Ill. App. 3d at 133, 426 N.E.2d at 562-63. We conclude that the matter is not so clear that it should have been ruled upon initially by the circuit court, without consideration by the arbitrator.

Accordingly, we reverse and remand the judgment of the trial court, with instructions to direct the parties to seek arbitration.

Reversed and remanded.

KNECHT and STEIGMANN, JJ., concur.