BOARD OF EDUCATION OF POSEN-ROBBINS SCHOOL DISTRICT NO. 143½, COOK COUNTY, Plaintiff-Appellant, *v.* JOE DANIELS *et al.,* Defendants-Appellees.

First District (3rd Division)   No. 81—2542

Opinion filed August 4, 1982.

Scariano, Kula & Associates, of Chicago Heights (Alan T. Sraga and Anthony Scariano, of counsel), for appellant.

Cornfield and Feldman, of Chicago (Jacob Pomeranz, of counsel), for appellees.

JUSTICE MCNAMARA delivered the opinion of the court:

Plaintiff, Board of Education of the Posen-Robbins School District No. 143½ (Board), filed this action seeking a declaratory judgment to vacate an arbitration award on the grounds that it was based on gross errors of fact and law, and that the arbitrator's decision was contrary to the manifest weight of the evidence. The trial court considered defendants' motion to dismiss as a motion for summary judgment and entered judgment for defendants, finding that the arbitra-

tion award should not be disturbed. The Board appeals.

The initial dispute arose from defendants' objection to the Board's interpretation of a provision of article V, paragraph 17 of their collective bargaining agreement. That provision provided in pertinent part:

> "That commencing with the school year September 1, 1973, each teacher shall, every five-year period thereafter, be required to pursue additional academic training at either graduate or undergraduate level, earning within said period a minimum of *six* (6) *credit hours*. Upon failing to comply with said provision, the teacher shall be barred from any annual increments otherwise payable on the salary schedule as adopted from time to time.
>
> That all lateral moves on the salary schedule shall be in accordance with a plan of instruction previously approved by the Superintendent of Schools of the District. No lateral movement on the salary schedule shall be recognized or compensated unless this condition has been met."

In a letter dated August 22, 1978, the Board announced its intent to impose the sanction provided in paragraph 17 against 28 teachers who had failed to pursue the additional academic training required by that provision. The Board interpreted the provision as allowing it to freeze the salaries of the 28 teachers so that they received the same salaries in the 1978-79 school year that they had received in the 1977-78 school year.

In June 1979, the 28 teachers affected by the salary freeze first filed their grievances. Only the defendant teachers continued to the later grievance stages. The Board denied the grievances, finding that they were not timely filed and that the sanctions were appropriate in light of the grievants' failure to pursue the additional academic training required by paragraph 17. The matter proceeded to arbitration as provided by the collective bargaining agreement.

At issue in the arbitration were the timeliness of the filing of the grievances and the meaning of the word "increments" as it appeared in paragraph 17. Defendants maintained that the sanction was intended to freeze the status of the noncomplying teacher on the salary schedule, thus denying that teacher all lateral step increases based on additional education or years of service, while still affording such teacher any across the board salary increase which would affect the schedule as a whole. The Board countered that it had been correct in precluding each noncomplying teacher from any and all salary increases, thereby freezing the salary itself at its present dollar amount.

In ruling in favor of defendants, the arbitrator determined that

the Board had improperly frozen the teachers' salaries. As to the timeliness of the grievances, the arbitrator found that although the official grievances were not formally filed until June 1979, the Board was aware of the existence of the grievances from the time its interpretation was applied in the fall of 1978. Furthermore, the Board's improper application of the language was of a continuous nature. The arbitrator thus concluded that the grievances were properly before him and ordered that the grievants be made whole for losses incurred as a result of the Board's improper action. The trial court upheld that award and this appeal follows.

We first address the Board's contention that the trial court erred in failing to vacate that portion of the award which determined that the teachers were entitled to a salary increase. Specifically the Board argues that the arbitrator's interpretation of the word "increments," as it appears in paragraph 17, was based on gross errors of law and was contrary to the manifest weight of the evidence. The Board asserts further that it was denied its right to judicial review as provided in the collective bargaining agreement because the trial court exercised undue restraint in its review of the arbitrator's interpretation of the language of that agreement.

■ The courts have long recognized the overriding interest in finality inherent in the submission of a dispute to arbitration. (*White Star Mining Co. v. Hultberg* (1906), 220 Ill. 578, 77 N.E. 327.) The interpretation of a collective bargaining agreement is a function of the arbitrator. It is the arbitrator's construction which was bargained for and the courts will not overrule that construction simply because their own interpretation differs from that of the arbitrator. (*Board of Trustees v. Cook County College Teachers Union, Local 1600* (1979), 74 Ill. 2d 412, 386 N.E.2d 47.) Accordingly, a court will review an arbitrator's contract interpretation only to determine whether the award drew its essence from the agreement so as to prevent a manifest disregard of that agreement. *Board of Trustees v. Cook County College Teachers Union, Local 1600.*

The Board maintains, however, that due to a provision in their collective bargaining agreement, review of the award should not be limited by the general rule of restraint normally applicable to review of arbitration awards. Article IV A 3 of the agreement provides that any unresolved disputes between the parties are to be settled by arbitration. Although the agreement recites that "[t]he Board and the Union will abide in good faith with the decision of the arbitrator to the extent permitted by law," it provides further that:

"The Union shall have no right to appeal from the decision of

the Arbitration. The School Board has the right to appeal from the decision of the Arbitrator, and should they do so, the Union shall have no right to appeal from the Trial Court decision, but the School Board may do so if they so desire."

■ Relying on language in *White Star Mining Co. v. Hultberg* (1906), 220 Ill. 578, 77 N.E. 327, and *Aldrich v. Aldrich* (1931), 260 Ill. App. 333, the board argues that the above provision entitles it to full judicial review. In *White Star Mining,* while exercising the restraint normally required when reviewing an arbitration award, the court alluded to a possible exception to this general principle where the contract contains an express intention to the contrary. Similarly in *Aldrich* the court referred to such a possible exception when it found mutuality in a contract even though the contract provided that one party had agreed to be bound absolutely by arbitration while the second party agreed to be bound only after court approval. Absent from both decisions, however, is any guidance as to what scope of review the exception might warrant. Nor does the provision in question here specify that the Board is entitled to any greater scope of review than that normally exercised in review of an arbitration award. We therefore find that the trial court was correct in limiting its scope of review in accord with the general rule.

We reject the Board's contention that the arbitrator ignored the plain and unambiguous meaning of the term "increments" and erred in considering extrinsic evidence concerning its trade meaning and in relying on his own personal experience. We note that the Board itself introduced extrinsic evidence to support its own interpretation of the term. Leonard Carriere, chief negotiator for the Board, testified that prior to 1969 a similar provision in the agreement between the parties provided that noncomplying teachers be denied "the annual increment." According to Carriere, this was subsequently changed to "any annual increments" in order to give the Board some control over teachers who had reached the top of the salary schedule and who therefore had no incentive to secure additional education absent the threat of a salary freeze.

■ The testimony to which the Board objects was that of Thomas C. Holland, an officer of the Illinois Federation of Teachers. He stated that the term "increments," as it is commonly used in collective bargaining agreements, refers, not to an across the board pay increase as urged by the Board, but rather to a step increase based on past or professional experience. We find that the term "increments" as used in paragraph 17 was susceptible to more than one meaning and that Holland's testimony was relevant as to the meaning intended by the

parties since both had previously entered similar agreements.

■■ We likewise agree with the trial court that the arbitrator's utilization of his own past experience in arriving at his decision did not amount to a gross error of law. Relying on his own experience and the testimony of experts, the arbitrator also based his interpretation of the term "increments" on the relationship of the term to the agreement as a whole. We find that the award was drawn from the essence of the agreement. Whether or not this court's thoughts as to the proper interpretation of the term "increments" differ from those of the arbitrator is of no consequence. It was the aribitrator's interpretation, not that of the court, for which the parties bargained. *Board of Trustees v. Cook County College Teachers Union, Local 1600.*

The Board also contends that the trial court erred by failing to vacate that portion of the abitration award which determined defendants' grievances to be timely filed. Article IV A 3 of the collective bargaining agreement provides in pertinent part:

> "The aggrieved teacher shall file the grievance in writing and at a mutually agreeable time, discuss the matter with the principal in the presence of a Union representative, if so desired, with the objective of resolving the matter. The filing of the grievance at the first stage must be within five (5) school days of the aggrieved becoming aware of the grievance."

The salary freeze in question was imposed at the start of the 1978-79 school year. Although no formal grievances were filed until June 1979, the arbitrator found that the Board was aware of the grievants' and Union's dissatisfaction immediately upon learning of the Board's interpretation and application of the language in question. In light of this awareness and of the continuous nature of the Board's improper application of the language, the arbitrator found that the delay in filing the formal grievance did not amount to an abandonment of the grievances by defendants.

■■■ Questions involving contractual time limitations are for the arbitrators, not the courts to decide. (*Village of Carpentersville v. Mayfair Construction Co.* (1981), 100 Ill. App. 3d 128, 426 N.E.2d 558.) Such decisions usually require construing the contract in light of the customs and practices of the industry, a task peculiarly within the competence of the arbitrator. (*Village of Carpentersville v. Mayfair Construction Co.*) Moreover, since the parties have bargained for the arbitrator's construction of the agreement, the courts will not overrule the arbitrator's decision because their interpretation is different from that of the arbitrator. (*Board of Trustees v. Cook County College Teachers Union, Local 1600.*) In the present case we find that the ar-

bitrator's decision as to timeliness did not constitute a manifest disregard of the agreement between the parties so as to justify our overruling it.

For the reasons stated, the judgment of the circuit court of Cook County upholding the arbitration award is affirmed.

Judgment affirmed.

McGILLICUDDY and RIZZI, JJ., concur.