# Illinois Official Reports

## Appellate Court

---

***Guarantee Trust Life Insurance Co. v. Platinum Supplemental Insurance, Inc.*,
2016 IL App (1st) 161612**

---

| | |
|---|---|
| Appellate Court Caption | GUARANTEE TRUST LIFE INSURANCE COMPANY, an Illinois Mutual Reserve Company, Plaintiff-Appellant, v. PLATINUM SUPPLEMENTAL INSURANCE, INC., f/k/a Platinum Services, Inc., an Iowa Corporation, and WAYNE A. BRIGGS, an Individual, Defendants-Appellees. |
| District & Nos. | First District, Sixth Division<br>Docket No. 1-16-1612, 1-16-1631 |
| Filed | December 9, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 15-CH-17997; the Hon. Thomas R. Allen, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Reed Smith LLP, of Chicago (John S. Vishneski III, Paul Walker-Bright, Michael D. Richman, and Emily E. Garrison, of counsel), for appellant.<br><br>Kirkland & Ellis LLP, of Chicago (Andrew R. Running, Frank G. Dylewski, and Jeffrey L. Lula, of counsel), for appellees. |

Panel      JUSTICE ROCHFORD delivered the judgment of the court, with opinion.
Justice Cunningham concurred in the judgment and opinion.
Presiding Justice Hoffman specially concurred, with opinion.

**OPINION**

¶ 1   Plaintiff, Guarantee Trust Life Insurance Company (GTL), appeals an order (1) granting defendant Platinum Supplemental Insurance, Inc.'s (Platinum) motion to compel arbitration of plaintiff's complaint against Platinum for breach of contract, rescission, fraud, and breach of fiduciary duty; and (2) staying plaintiff's litigation against defendant Wayne A. Briggs (Platinum's president) for fraud, breach of fiduciary duty, and tortious interference with contract, pending the arbitration between GTL and Platinum. Mr. Briggs appeals the order denying his motion to compel arbitration of plaintiff's claims against him for fraud, breach of fiduciary duty, and tortious interference with contract. We affirm.

¶ 2   GTL provides a portfolio of health, accident, life, and special risk insurance products. Platinum markets and sells insurance products on behalf of insurance companies. Defendant Wayne Briggs is the founder of Platinum, served as its chief executive officer, and currently serves as its president and chairman of the board of directors.

¶ 3   On December 11, 2015, GTL filed this suit against Platinum and Mr. Briggs raising claims that stem from an April 4, 2002, marketing agreement between GTL and Platinum. Mr. Briggs signed the marketing agreement on behalf of Platinum as its president and CEO. The complaint sets forth the following factual background.

¶ 4   Pursuant to the marketing agreement, Platinum and GTL agreed to jointly develop a long-term care insurance product that would be marketed and sold exclusively by Platinum and underwritten by GTL. Platinum, on behalf of GTL, had the exclusive authority, personally or through "[i]ndependent [s]olicitors," to solicit and procure applications for the product, deliver issued policies, collect initial premiums, and service the business. Additionally, Platinum had the responsibility for supervising and managing its employees and independent solicitors as to the marketing of the product on GTL's behalf and for "compliance with all applicable local, state and federal laws and regulations" and with GTL's rules concerning advertising and marketing conduct. GTL's advertising policy required that, prior to use, all sales materials be approved, in writing, by its compliance department. As president and CEO of Platinum, Mr. Briggs was responsible for all aspects of Platinum's performance under the marketing agreement and had authority over Platinum's supervision, management, and training of its employees and independent solicitors in connection with soliciting and procuring insurance applications on GTL's behalf.

¶ 5   Platinum marketed and sold the product from April 4, 2002, through July 17, 2015. During that time period, through applications solicited and procured by Platinum, GTL issued 186,129 insurance policies and paid Platinum in excess of $226 million in commissions and other compensation.

¶ 6   The marketing agreement included a dispute resolution provision. Section 17 provided, in relevant part:

"17. Mandatory Binding Arbitration. Except as otherwise provided in this Agreement, all claims, disputes and other controversies arising out of or in any manner relating to this Agreement, or any other agreement executed in connection with this Agreement, or to the performance, interpretation, application or enforcement hereof, including, but not limited to, breach hereof (in each case, 'Dispute'), shall be submitted to binding, non-appealable arbitration, and such arbitration shall be governed by the Rules of the American Arbitration Association ('AAA').

Either party may within one year from the date of the alleged breach or occurrence resulting in the Dispute, make a demand for arbitration by filing a demand in writing with the other party and serving the same by depositing it in the U.S. Mail, certified mail return receipt requested. GTL and Platinum shall each choose, within sixty (60) days after demand arbitration is made, a person from the panel of the AAA as its arbitrator and the two appointed arbitrators shall choose a third arbitrator."

Section 12(f) of the marketing agreement, which covered the effects of the termination of the marketing agreement, provided that, "[n]otwithstanding section 17," a nonbreaching party was entitled to seek injunctive relief against the party who breached a covenant in section 12. Additionally, section 13, which protected confidential and proprietary information, allowed injunctive relief and money damages for violations of section 13.

¶ 7 The marketing agreement also contained a choice of law provision. Section 16(f) stated that the marketing agreement was to be "construed and enforced in accordance with the law of the state of Illinois."

¶ 8 In December 2012, Michael Casper brought an action in Colorado state court (Casper v. Guarantee Trust Life Insurance Co., No 12 CV 740 (Pueblo Co. Dist. Ct. Colo.) (the Casper lawsuit) against GTL, Platinum, and an independent solicitor. GTL had issued an insurance policy to Mr. Casper in 2010 pursuant to an application solicited and procured by the independent solicitor (the Casper policy). The Casper lawsuit included claims against GTL for breach of contract and bad faith for GTL's denial of coverage under the Casper policy, claims against Platinum and the independent solicitor for negligently misrepresenting the scope of coverage during the sale of the Casper policy, and a claim against Platinum for failure to properly train its agents.

¶ 9 During the proceedings in the Casper lawsuit, GTL learned that Platinum, in violation of the marketing agreement, had failed to supervise, manage, or train its employees and independent solicitors to comply with all applicable local, state, and federal laws when soliciting and procuring applications on behalf of GTL and, during training, had used materials that had not been approved by GTL's compliance department. Platinum's breaches occurred over a period of years—from April 4, 2002, to at least December 5, 2012—and involved "thousands of applications."

¶ 10 Mr. Casper settled his claims against Platinum and the independent solicitor. However, the claims against GTL proceeded to trial. On July 15, 2014, the jury found in favor of Mr. Casper and against GTL. The judgment on the verdict included an award of approximately $1.9 million in damages against GTL, and GTL has appealed that judgment.

¶ 11 GTL's seven-count complaint in this case included four actions directed against Platinum: (1) rescission of the marketing agreement as a result of Platinum's alleged fraud and material breaches of that agreement, (2) common-law fraud in connection with its conduct that led to the Casper lawsuit, (3) breach of fiduciary duty for failure to ensure that

its employees and independent solicitors solicited and procured insurance applications in a manner that did not expose GTL to the type of claims made in the Casper lawsuit, and (4) breach of the marketing agreement. The remaining three counts were directed against Mr. Briggs, in his capacity as Platinum's president and CEO: (1) common-law fraud due to his knowing or reckless disregard of Platinum's supervision, management, and training of its employees and independent solicitors with regard to soliciting and procuring insurance policies on behalf of GTL; (2) breach of fiduciary duty based on his knowing or reckless disregard of Platinum's conduct in wrongfully soliciting and procuring insurance applications that exposed GTL to claims similar to those set forth in the Casper lawsuit; and (3) tortious interference with contract. GTL sought to recover damages relating to the commission and compensation it had paid Platinum under the marketing agreement, except the commission and compensation, which was covered by a July 9, 2015, agreement between GTL and Platinum, and indemnification as to the Casper lawsuit.

¶ 12       Meanwhile, on November 21, 2014, GTL demanded that Platinum indemnify it for the legal fees and the judgment in the Casper lawsuit pursuant to section 15(b) of the marketing agreement. That section provided that "Platinum shall hold GTL *** harmless" against any claim or action arising from any act of Platinum relating to the marketing agreement. Platinum, by letter dated December 12, 2014, denied GTL's indemnification demand. GTL provided written notice to Platinum of its termination of the marketing agreement effective July 17, 2015.

¶ 13       On July 9, 2015, GTL and Platinum entered into an agreement that resolved a number of issues between them arising out of the termination of the marketing agreement (settlement agreement). The settlement agreement contained a dispute resolution clause that referred to, and adopted in part, section 17 of the marketing agreement. After the entry of the settlement agreement, GTL asserted that Platinum, from July through September 2015, had breached various provisions of the settlement agreement.

¶ 14       On December 9, 2015, GTL, pursuant to section 17 of the marketing agreement, demanded that Platinum arbitrate two disputes—Platinum's refusal to indemnify GTL for the Casper lawsuit and Platinum's breaches of the settlement agreement—and Platinum complied. GTL's arbitration matter against Platinum is currently pending.

¶ 15       As to GTL's lawsuit here, Platinum and Mr. Briggs jointly filed a motion to stay and compel arbitration based on section 17 of the marketing agreement (motion to compel). In seeking to compel arbitration, Platinum maintained that section 17 required arbitration because the factual allegations and disputes set forth in GTL's complaint arose from and were related to the marketing agreement. Platinum further contended that the claims in this action "overlapped" with those for which GTL had demanded arbitration and that GTL could not "selectively invoke" the arbitration provision of the marketing agreement.

¶ 16       Mr. Briggs sought to compel GTL to arbitrate the claims in its complaint against him or, at the very least, to stay proceedings on those claims pending arbitration of the claims against Platinum. Mr. Briggs argued that he could invoke section 17 of the marketing agreement because GTL's claims against him were substantially the same as the claims against Platinum and were based on his conduct as an agent of Platinum. Further, Mr. Briggs maintained that GTL was equitably estopped from denying the arbitrability of the claims against him.

¶ 17       GTL responded to the motion to compel by referring to the language of section 17 that provided that either party "may within one year from the date of the alleged breach or

occurrence resulting in the [d]ispute, make a demand for arbitration." Based on this language, GTL maintained that, for a period of time up to one year from the accrual of a breach or occurrence under the marketing agreement, the parties were required to arbitrate their disputes, but after this one-year period had elapsed, the parties were free to pursue litigation of their claims under the marketing agreement. GTL asserted that its conduct conformed to this reading of section 17 in that it had demanded arbitration of the indemnification and settlement agreement disputes on December 9, 2015, which was within one year of the accrual of those claims, and second, by thereafter filing the present lawsuit because the claims in the complaint had all accrued more than one year prior to the suit. Therefore, where neither Platinum nor GTL had demanded arbitration within the one-year period from accrual of the claims being made in this court, the parties were free to litigate those claims.

¶ 18    GTL argued that Mr. Briggs, as an agent of Platinum, could not compel arbitration under section 17, as he was not a party to the marketing agreement and had signed the marketing agreement as an agent of Platinum. GTL further argued that Illinois courts had rejected the federal case law holding, under the Federal Arbitration Act (9 U.S.C. § 2 (2012)), that nonsignatories to an arbitration agreement could compel arbitration on equitable estoppel grounds.

¶ 19    In its reply, Platinum argued that the one-year provision in section 17 "can only be construed as a one-year limitation period which supplements the binding arbitration clause, not as a complete negation of the mandatory language that precedes it." In his reply, Mr. Briggs argued that, as an agent of Platinum, he was entitled to compel GTL to arbitrate its claims against him. Alternatively, Mr. Briggs maintained that he is entitled to a stay of the proceedings against him pending the arbitration between Platinum and GTL.

¶ 20    On May 24, 2016, after hearing arguments on the motion to compel, the court entered an order that (1) granted Platinum's motion to compel GTL to arbitrate the claims against it in the complaint, (2) denied Mr. Briggs's motion to compel GTL to arbitrate the claims against him in the complaint, and (3) granted Mr. Briggs's alternative request to stay the litigation proceedings against him pending the arbitration between GTL and Platinum.

¶ 21    The circuit court, in entering the order, made certain oral findings. The court noted that GTL and Platinum were "two sophisticated parties" and that section 17 must be read consistently with their intent. The circuit court then interpreted section 17 as a "shotgun mandatory arbitration provision" with an exception for arbitration only where injunctive relief is sought. The court then concluded from the "totality of the circumstances," including "the parties" and "their sophistication," that the intent of Platinum and GTL was to resolve disputes under the marketing agreement through arbitration. Finally, the circuit court found that, as a nonsignatory to the marketing agreement, Mr. Briggs could not seek to compel GTL to arbitrate the claims in the complaint.

¶ 22    On June 14, 2016, GTL, pursuant to Illinois Supreme Court Rule 307(a) (eff. Nov. 1, 2016), timely filed a notice of interlocutory appeal as of right from the portions of the May 24, 2016, order granting Platinum's motion to compel arbitration and Mr. Briggs's motion to stay the litigation pending the Platinum-GTL arbitration. On that same day, Mr. Briggs filed a notice of interlocutory appeal as of right under Rule 307(a) from only the denial of his motion to compel GTL to arbitrate. On July 7, 2016, this court granted the parties' joint motion to consolidate the appeals.

¶ 23    In its appeal, GTL argues that the circuit court erred in compelling its claims against Platinum to arbitration because section 17 included a one-year limitation on making a demand for arbitration. GTL also argues that the circuit court erred in granting a stay of its claims against Mr. Briggs. Mr. Briggs, in his appeal, argues that the court erred in denying his request to compel GTL to arbitrate its claims against him that were based on him being an agent of Platinum.

¶ 24    We first address GTL's appeal from the order of the circuit court granting Platinum's motion to compel arbitration. This issue requires us to interpret the language of section 17.

¶ 25    We review *de novo* an order granting a motion to compel arbitration that was made without an evidentiary hearing and raises only a legal issue. *LRN Holding, Inc. v. Windlake Capital Advisors, LLC*, 409 Ill. App. 3d 1025, 1027 (2011). Additionally, the construction of an arbitration clause is reviewed *de novo*. *QuickClick Loans, LLC v. Russell*, 407 Ill. App. 3d 46, 52 (2011).

¶ 26    The Illinois Uniform Arbitration Act (Act) (710 ILCS 5/1 (West 2014)), " 'must be deemed part of a contract containing an arbitration clause.' " *Advocate Financial Group v. Poulos*, 2014 IL App (2d) 130670, ¶ 48 (quoting *Johnson v. Baumgardt*, 216 Ill. App. 3d 550, 560 (1991)). The Act embodies a policy that favors arbitration as a cost-effective method of dispute resolution. *Donaldson, Lufkin & Jenrette Futures, Inc. v. Barr*, 124 Ill. 2d 435, 443 (1988). Section 2 of the Act provides that, upon the application of a party, the trial court may compel or stay arbitration or stay a court action pending arbitration. 710 ILCS 5/2(a), (b) (West 2014). A motion to compel raises a sole and narrow issue—whether there is an agreement between the parties to arbitrate the dispute at issue. *Donaldson*, 124 Ill. 2d at 444, 449. In making that determination, a three-pronged approach is used: (1) if it is clear that the dispute falls within the scope of the arbitration clause or agreement, the court must compel arbitration; (2) if it is clear that the dispute does not fall within the arbitration clause or agreement, the court must deny the motion to compel; and (3) if it is unclear or ambiguous whether the dispute falls within the scope of the arbitration clause, the matter should be referred to the arbitrator to decide arbitrability. *Id.* at 443-50.

¶ 27    The principles for interpreting the scope of an arbitration clause were recently explained in *Fiala v. Bickford Senior Living Group, LLC*, 2015 IL App (2d) 141160:

> "It is a fundamental tenet of Illinois law that the parties are bound to arbitrate only those issues they have clearly agreed to arbitrate. *Keeley & Sons, Inc. v. Zurich American Insurance Co.*, 409 Ill. App. 3d 515, 520 (2011). Where an arbitration clause is 'generic,' meaning that it is nonspecific in designating the arbitrable issues, the court is required to examine the wording of the arbitration clause along with the other terms of the contract in which the arbitration clause is found. *Id.* at 520-21. A 'generic' arbitration clause is characterized by language providing that all claims arising out of or relating to the contract at issue shall be decided by arbitration. *Id.* at 520. By contrast, where an arbitration clause contains the phrase, 'arising out of the agreement' (or a variation thereof), but fails to also include the phrase, 'or relating to [the agreement]' (or a variation thereof), it is narrower than a generic clause, and any arbitration should be limited to the specific terms of the contract or agreement containing the arbitration clause. *Id.* at 522." *Id.* ¶ 19.

¶ 28    Section 17 defines the scope of arbitration by using the following language: "all claims, disputes and other controversies arising out of or in any manner relating to this [a]greement."

Under the above principles, section 17 must be considered a generic arbitration clause and must be "broadly construed." *Id.* ¶ 21.

¶ 29     GTL does not argue that its claims against Platinum are not within the scope of the arbitration clause. Rather GTL argues that section 17 contains a one-year time limitation on seeking arbitration, and because neither party requested arbitration as to the claims set forth in its complaint within one year of the occurrence or breach, GTL is no longer required to arbitrate those claims but instead may litigate them in court. We disagree.

¶ 30     An agreement to arbitrate is a matter of contract. *Salsitz v. Kreiss*, 198 Ill. 2d 1, 13 (2001). When construing a contract, the primary goal is to effectuate the intent of the parties. *Premier Title Co. v. Donahue*, 328 Ill. App. 3d 161, 164 (2002). When the contractual language is clear, the court must determine the parties' intent solely from the plain language of the contract. *Id.* The contractual language must be given its plain and ordinary meaning. *Id.* When interpreting the contract, the court must consider the document as a whole. *Id.* The court cannot make a new contract by supplying provisions or by giving plain and unambiguous language a distorted construction. *Whaley v. American National Insurance Co.*, 30 Ill. App. 3d 32, 34 (1975).

¶ 31     Section 17 is titled *mandatory* arbitration and states in the first paragraph that, except as otherwise provided in the agreement,[1] disputes under the marketing agreement, "*shall* be submitted to binding, non-appealable arbitration." (Emphasis added.) Section 17 further states that any arbitration "*shall* be governed by the Rules of the American Arbitration Association," the hearing "*shall*" be at the time and place selected by the arbitrators, a decision of two of the three arbitrators "*shall* be binding and conclusive and non-appealable," the costs and fees connected with the arbitration "*shall* be borne by the losing party or in such proportions as the arbitrators shall determine," and the successful party "*shall* recover *** all reasonable attorneys' fees." (Emphases added.) By providing for such mandatory binding arbitration, with mandatory provisions governing the arbitration procedures, the parties indicated that when third-person resolution of a dispute under the marketing agreement is sought, the dispute must be submitted to arbitration as opposed to litigation.

¶ 32     The second paragraph of section 17 states either party "may within one year from the date of the alleged breach or occurrence resulting in the [d]ispute, make a demand for arbitration." GTL argues that when neither party made an arbitration demand within the one-year period from the date of the alleged breach or occurrence, "the parties were both free to litigate their dispute in court."

¶ 33     We disagree, as there is no provision in section 17 (or anywhere in the marketing agreement other than sections 12(f) and 13, which are inapplicable here) for resolution of a dispute/breach by litigation instead of by arbitration. To read section 17 as allowing the parties to file a lawsuit when no party has made an arbitration demand within one year of the alleged breach would, in effect, be making a new contract by supplying a litigation provision not present in the contract and by giving a distorted construction to the plain and ordinary language of section 17, which provides only for mandatory arbitration (not litigation) to resolve contract disputes.

---

[1]The exceptions are set forth in sections 12(f) and 13, discussed earlier in this opinion, neither of which is applicable here.

¶ 34    Accordingly, as it is clear from the language of the marketing agreement that GTL's claims against Platinum are subject to mandatory arbitration, we affirm the order granting Platinum's motion to compel arbitration.

¶ 35    Next, GTL argues for reversal of the order staying GTL's litigation proceedings against Mr. Briggs pending the arbitration between GTL and Platinum. "Where several actions are pending which involve substantially the same subject matter, a court may stay the proceedings in one matter and see whether the disposition of one action may settle the other." *J.S.A. v. M.H.*, 384 Ill. App. 3d 998, 1005 (2008). This "furthers the legitimate goal of judicial economy and the strong policy favoring arbitration." *Sabo v. Dennis*, 408 Ill. App. 3d 619, 630 (2011). The decision to grant or deny a motion to stay will not be overturned unless the court abused its discretion. *Aventine Renewable Energy, Inc. v. JP Morgan Securities, Inc.*, 406 Ill. App. 3d 757, 760 (2010).

¶ 36    Here, GTL's claims against Mr. Briggs are premised on an alleged breach of the marketing agreement. The arbitrator in the GTL-Platinum arbitration proceedings may determine whether the marketing agreement was breached. Accordingly, the stay of GTL's litigation proceedings against Mr. Briggs is warranted because "there may be no need for further litigation after the resolution of the arbitration." *Sabo*, 408 Ill. App. 3d at 630. The circuit court committed no abuse of discretion in granting the stay.

¶ 37    Next, we address Mr. Briggs's appeal from the order denying his motion to compel arbitration of GTL's claims against him under the mandatory arbitration clause in section 17 of the marketing agreement.

¶ 38    Mr. Briggs executed all pertinent documents in connection with the marketing agreement in his representative capacity on behalf of Platinum; he did not sign any document in connection with the marketing agreement purely in his individual capacity. As a nonsignatory, Mr. Briggs cannot compel GTL to arbitrate under the marketing agreement. See *Carter v. SSC Odin Operating Co.*, 2012 IL 113204, ¶ 55 ("under basic principles of contract law, only parties to the arbitration contract may compel arbitration or be compelled to arbitrate").

¶ 39    Mr. Briggs argues he should be allowed to compel arbitration as an agent of Platinum. We disagree, as this court has recently rejected such an "agency" exception to the rule that only parties to an agreement may enforce it. See *Koehler v. The Packer Group, Inc.*, 2016 IL App (1st) 142767, ¶ 32. The *Koehler* court recognized that an agency exception has been recognized "to some extent in cases applying the Federal Arbitration Act (FAA) (9 U.S.C. § 1 *et seq.* (2012))," but not by a court applying (as here) the Illinois Uniform Arbitration Act (710 ILCS 5/1 *et seq.* (West 2010)). *Koehler*, 2016 IL App (1st) 142767, ¶ 32.

¶ 40    Mr. Briggs also argues he should be allowed to compel arbitration under an equitable estoppel theory. Under Illinois law, " '[a] claim of equitable estoppel exists where a person, by his or her statements or conduct, induces a second person to rely, to his or her detriment, on the statements or conduct of the first person. The party asserting a claim of estoppel must have relied upon the acts or representations of the other and have had no knowledge or convenient means of knowing the facts, and such reliance must have been reasonable.' " *Ervin v. Nokia, Inc.*, 349 Ill. App. 3d 508, 514 (2004) (quoting *In re Marriage of Smith*, 347 Ill. App. 3d 395, 399 (2004)).

¶ 41    Mr. Briggs makes no argument on appeal that he has satisfied these elements of equitable estoppel, and accordingly, he has forfeited review thereof. See Ill. S. Ct. R. 341(h)(7) (eff. Jan. 1, 2016).

¶ 42    Instead, Mr. Briggs argues we should adopt the following definition of equitable estoppel that has been accepted in several federal courts to allow a nonsignatory to compel the arbitration of claims brought by a signatory to an arbitration agreement:

> "First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause 'must rely on the terms of the written agreement in asserting [its] claims' against the nonsignatory. [Citation.] When each of a signatory's claims against a nonsignatory 'makes reference to' or 'presumes the existence of' the written agreement, the signatory's claims 'arise[ ] out of and relate[ ] directly to the [written] agreement,' and arbitration is appropriate. [Citation.] Second, 'application of equitable estoppel is warranted *** when the signatory [to the contract containing the arbitration clause] raises allegations of *** substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract.' [Citation.] Otherwise, 'the arbitration proceedings [between the two signatories] would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted.' " *MS Dealer Service Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999).

¶ 43    Mr. Briggs's argument fails, as the appellate court has declined to follow the federal decisions adopting this expanded interpretation of equitable estoppel. See *Ervin*, 349 Ill. App. 3d at 516.

¶ 44    For the foregoing reasons, we affirm the circuit court's order, which granted Platinum's motion to compel arbitration and Mr. Briggs's motion to stay the litigation against him pending the Platinum-GTL arbitration and denied Mr. Briggs's motion to compel arbitration of GTL's claims against him. As a result of our disposition of this case, we need not address the other arguments on appeal.

¶ 45    Affirmed.

¶ 46    PRESIDING JUSTICE HOFFMAN, specially concurring.

¶ 47    I concur in the majority's opinion affirming the judgment of the circuit court. I write separately to address GTL's argument that the circuit court erred by "failing to give any effect to the one-year forum limitation provision embedded in the arbitration clause." I believe that the argument is based upon a failure to distinguish between substantive arbitrability and procedural arbitrability.

¶ 48    Substantive arbitrability refers to the question of whether a particular dispute is subject to the parties' contractual arbitration agreement. There is a simple, two-part test for determining substantive arbitrability: (1) whether the parties contractually agreed to arbitrate their disputes at all and (2) whether the dispute at issue comes within the scope of the arbitration agreement. See *Donaldson, Lufkin & Jenrette Futures, Inc. v. Barr*, 124 Ill. 2d 435, 444-45 (1988); *ACE Capital re Overseas Ltd. v. Central United Life Insurance Co.*, 307 F.3d 24, 28 (2d Cir. 2002). The court decides substantive arbitrability, and when the language of the arbitration clause within a contract is clear and it is apparent that the dispute at issue falls

within the scope of that arbitration clause, the court should compel arbitration. See *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 546-47 (1964); *Donaldson*, 124 Ill. 2d at 445.

¶ 49 By contrast, issues relating to the procedural arbitrability of a dispute are for the arbitrator to decide. Once it is determined that a dispute is substantively arbitrable, procedural questions that grow out of the dispute and bear on the final disposition should be left for the arbitrator. *John Wiley & Sons*, 376 U.S. at 556-57. Whether the parties have complied with the procedural requirements for arbitrating the case should be decided by the arbitrator. Issues concerning timeliness are procedural in nature and are for the arbitrator to resolve. *Amalgamated Transit Union, Local 900 v. Suburban Bus Division of the Regional Transportation Authority*, 262 Ill. App. 3d 334, 340-41 (1994); *Board of Education Posen-Robbins School District No. 143½ v. Daniels*, 108 Ill. App. 3d 550, 555 (1982); *Village of Carpentersville v. Mayfair Construction Co.*, 100 Ill. App. 3d 128, 133 (1981).

¶ 50 In this case, it is undisputed that the parties' marketing agreement contains an arbitration provision in section 17. Further, GTL has not argued, nor could it, that its claims against Platinum do not fall within the scope of the arbitration clause. It follows then that GTL's claims against Platinum are substantively arbitrable. Nevertheless, GTL argues that it is no longer required to arbitrate its claims because neither party requested arbitration within the one-year limitation on seeking arbitration set forth in the second paragraph of section 17. Its argument in this regard goes to the procedural arbitrability of its claims against Platinum and is a matter for the arbitrator to decide, not the court.

¶ 51 During the argument before the circuit court, Platinum's attorney acknowledged that it is Platinum's position that GTL's claims are barred by the one-year limitation provision contained in section 17 but specifically told the trial judge that "[w]e are not asking you to so rule." The reason for not asking the circuit court to rule on the timeliness of GTL's claims is that the issue is one for the arbitrator to decide. I find, therefore, that GTL's argument that the circuit court erred by "failing to give any effect to the one-year forum limitation provision embedded in the arbitration clause" is without merit.

- 10 -