2025 IL App (1st) 242226-U

No. 1-24-2226

Third Division
September 30, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

|  |  |  |
|---|---|---|
| BEN WEINSCHNEIDER, | ) | Appeal from the Circuit Court |
|  | ) | of Cook County. |
| Plaintiff-Appellee, | ) |  |
|  | ) | No. 2024 L 001238 |
| v. | ) |  |
|  | ) | The Honorable |
| ITRIA VENTURES, LLC, a Delaware Limited Liability | ) | Sophia H. Hall, |
| Company, | ) | Judge Presiding. |
|  | ) |  |
| Defendant-Appellant. | ) |  |
|  | ) |  |

_____

JUSTICE REYES delivered the judgment of the court.
Justices Lampkin and Rochford concurred in the judgment.

**ORDER**

¶ 1    *Held:*  The defendant's motion to compel arbitration and to dismiss the complaint was properly denied where the arbitration agreement did not clearly apply to the plaintiff guarantor.

¶ 2    Defendant Itria Ventures, LLC (Itria), and nonparty Community Integrated Living, Inc. (CIL), entered into two receivables sale agreements (agreements), for which plaintiff Ben Weinschneider served as guarantor of CIL's obligations. Plaintiff later filed suit against Itria in the circuit court of Cook County, alleging that the agreements were usurious contracts and

requesting to be released from his obligations as guarantor. In response, Itria filed a motion to compel arbitration, arguing that the agreements required any disputes to be arbitrated. The circuit court denied the motion to compel arbitration, finding that plaintiff was not bound by the agreements' arbitration clause. Itria filed an interlocutory appeal under Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017) and, for the reasons that follow, we affirm.

¶ 3                                    BACKGROUND

¶ 4                            *Receivables Sale Agreements*

¶ 5       CIL is an Illinois corporation which provides supervised residential arrangements in group homes for adults with developmental disabilities. In July 2023 and December 2023, CIL entered into two receivables sale agreements with Itria, each governed by New York law. Under the agreements, Itria purchased the receivables of CIL—and CIL received funding from Itria—subject to various requirements and restrictions. Plaintiff signed each agreement on behalf of CIL as its "[m]anaging [m]ember."[1] He also signed as the guarantor of CIL's performance under each agreement. As the agreements serve as the basis for the issue on appeal, we describe them in some detail.

¶ 6       The agreements define Itria as the "Purchaser," CIL as the "Merchant," and plaintiff as the "Guarantor." The first page of the agreements, which set forth the purchase and sale terms, provide that "all parties and guarantor agree to conduct this transaction by electronic means as further specified in the agreement." The first substantive paragraphs of the agreements provide:

> "This RECEIVABLES SALE AGREEMENT ('Agreement'), dated as of the date specified on the prior page, is made by and between Itria Ventures LLC, a Delaware

---

[1] While plaintiff signed the agreements as "managing member" of CIL, we observe that CIL is a corporation.

limited liability company ('Purchaser' or 'we') and the merchant(s) identified as 'Merchant' in the Purchase and Sale Terms and on the signature page hereof (collectively, 'Merchant' or 'you').

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties now intend to be legally bound and agree as follows[.]"

Twelve pages of various terms, split into 17 sections, then follow. Throughout the agreements, the defined terms "Merchant," "Purchaser," "Guarantor," "you," and "we" are used to define the contractual obligations and rights set forth therein. The term "parties," which is not a defined term under the agreements, is also used on occasion.

¶ 7        The agreements contained a number of waivers, including waivers of (1) the right to start or join a class action suit; (2) the right to trial by jury; (3) the right to claim that the transaction implemented by the agreements "is a loan and not a 'true sale' of receivables"; and (4) the right to raise defenses and counterclaims. These waivers appeared in both sections 1 and 14 of the agreements. In addition, as relevant to the instant appeal, section 15(e) of the agreements contained an arbitration provision, which provided:

"Except as expressly otherwise provided herein, each party agrees to confidential arbitration of all disputes and claims arising out of or relating to this Agreement, including issues relating to the arbitrability of any dispute or claim (collectively, 'claims'). If a party seeks to have a dispute settled by arbitration, that party must first send to the other party, by certified mail, a written Notice of Intent to Arbitrate (the 'Notice'). If the parties do not reach an agreement to resolve the claim within thirty (30) days after the Notice is received, Purchaser and Merchant agree that the claim will

3

be resolved by a final and binding arbitration proceeding with JAMS, Inc. ('JAMS') in New York County, State of New York, under the Optional Expedited Arbitration Procedures then in effect. *** Purchaser and Merchant agree that, except as expressly otherwise provided herein, (i) arbitration is the required and exclusive forum for the resolution of all claims and (ii) to the fullest extent permitted by law, Purchaser and Merchant are each permanently giving up their right to a jury trial in any forum and the right to a judicial forum for the resolution of any and all claims. *** Notwithstanding any provision hereof, upon a Material Breach by Merchant, Purchaser may commence a judicial action to collect Contract Damages, or to enforce any collection remedy [under] this Agreement or at law. And in any such judicial proceeding Purchaser shall have the right to respond to any defenses or claims asserted by any Merchant or Guarantor by contending, among other things, that Merchant's or Guarantor's claims or defenses must be arbitrated under this arbitration clause. Merchant agrees that the commencement of any such judicial action shall not constitute a waiver by Purchaser of its right to arbitrate any such claims arising under this Agreement."

CIL, as the "Merchant," also had the ability to opt out of the arbitration clause by making such an election within 10 business days after the effective date of the applicable agreement.

¶ 8      Section 16 of the agreements consisted of the "Guaranty of Performance," setting forth plaintiff's rights and obligations as guarantor. Section 16(a), which was entitled "Guaranty of Performance," provided that plaintiff guaranteed CIL's performance of the obligations specified in the agreements upon the occurrence of a material breach, and concluded by providing that "[e]ach Guarantor acknowledges that such guarantor has read and fully understands the provisions of this Agreement, including without limitation the obligations of

Merchant set out in Section 6 and the arbitration provisions directly above." (Emphasis omitted.) Section 16(b), which was entitled "Waivers," set forth several rights waived by plaintiff and concluded by providing that "[e]ach guarantor acknowledges and hereby reaffirms the waivers specified in Section 1 and Section 14, including without limitation the jury waiver and class action waiver." (Emphasis omitted.)

¶ 9        Finally, section 17(a) of the agreements provided, in relevant part, that "[t]his Agreement (including the above Guaranty) constitutes the entire agreement between the parties with respect to the subject matter hereof, and supersedes all previous agreements and understandings, whether written or oral."

¶ 10       The agreements concluded by providing:

> "IN WITNESS WHEREOF, (i) Merchant and Purchaser by their duly authorized officers have signed this Receivables Sale Agreement and (ii) each Guarantor has subscribed to the Guaranty of Performance (Section 16), in each case in accordance with the terms thereof. By signing below, Merchant and each Guarantor hereby affirm to Purchaser that they have read and understand this Agreement, including without limitation the provisions referenced in Section 1 (Fundamental Terms, Conditions and Waivers), Section 14 (Merchant Waivers) and Section 15(e) (Arbitration). By signing the Guaranty, each Guarantor further affirms to Purchaser that such Guarantor has read and fully understands the Guaranty of Performance (Section 16) and that, by signing below, such guarantor will be personally liable for the timely and complete performance of Merchant's obligations as set forth therein." (Emphases omitted.)

¶ 11                    *Complaint and Motion to Compel Arbitration*

¶ 12         In February 2024, plaintiff filed a complaint in the circuit court of Cook County[2] against Itria, alleging that Itria had disguised loans as purchases of receivables to evade New York usury laws. For example, the July 2023 agreement provided that Itria purchased $945,000 in receivables for funding in the amount of $671,500; the payment obligations in the agreement effectively resulted in an interest rate of more than 36%. Plaintiff further alleged that Itria ignored certain collection caps in the agreements, which prevented CIL from satisfying its payroll obligations and consequently damaged its business.

¶ 13         In the complaint, plaintiff sought a declaratory judgment finding that he was released from his obligations as guarantor, as the "loan[s]" from Itria were usurious under New York law and thus illegal. He also sought a finding that the transactions which he guaranteed were loans and that the agreements were a "subterfuge" to evade New York usury laws.

¶ 14         In response, Itria filed a motion to compel the arbitration of plaintiff's claims and to dismiss the complaint with prejudice pursuant to section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2022)). Itria asserted that plaintiff's claims were subject to the mandatory arbitration clause contained in the agreements. Based on the agreements' terms, Itria maintained that (1) a valid agreement to arbitrate existed between plaintiff and Itria, and (2) plaintiff's claims "clearly fall" within the scope of the arbitration clause.

¶ 15         In his response to Itria's motion, plaintiff asserted that the initial page of each agreement referred to Itria and CIL as the "parties" and separately referred to plaintiff as the "guarantor." As plaintiff was not a "party" to the agreements, he contended that he was not bound by the

_____

[2] Although the complaint initially was filed in the Law Division, this matter subsequently was transferred to the Chancery Division on plaintiff's motion.

arbitration clauses therein. Plaintiff also maintained that the arbitration provisions were expressly (and solely) between Itria and CIL, and further argued that even if an ambiguity existed as to his obligations, the agreements should be construed in his favor, as the guarantor. In its reply, Itria reiterated that each agreement stated—in bold font—that the guarantor acknowledged the obligations set forth in the arbitration clause.

¶ 16    On October 10, 2024, the circuit court entered a memorandum opinion and order, denying Itria's motion to dismiss. After reviewing the language of the agreements, the circuit court found that the agreements did not "clearly and unmistakably" demonstrate that plaintiff, as the guarantor, was a "party" who agreed to arbitration. The circuit court further found that Itria's reliance on plaintiff's acknowledgment of the obligations set forth in the arbitration clause was "unavailing," as a "clear reference to an ambiguous arbitration agreement does not save the arbitration agreement from being ambiguous." On November 8, 2024, Itria filed a notice of interlocutory appeal under Rule 307(a)(1), and this appeal follows.

¶ 17                                   ANALYSIS

¶ 18    On appeal, the sole issue is whether the circuit court erred in denying Itria's motion to compel arbitration and to dismiss the complaint. Rule 307(a)(1) permits interlocutory appeals from orders granting or denying an injunction. Ill. S. Ct. R. 307(a)(1) (eff. Nov. 1, 2017). An order denying a motion to compel arbitration and to dismiss the complaint is injunctive in nature and is appealable under Rule 307(a)(1). *Sanders v. Oakbrook Healthcare Centre, Ltd.*, 2022 IL App (1st) 221347, ¶ 16; *Herns v. Symphony Jackson Square LLC*, 2021 IL App (1st) 201064, ¶ 14.

¶ 19    In this case, Itria's motion to compel arbitration and to dismiss the complaint was filed pursuant to section 2-619(a)(9) of the Code, which provides for dismissal when a claim is

"barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2022). A motion to dismiss under section 2-619 admits the legal sufficiency of all well-pleaded facts but allows for the dismissal of claims barred by an affirmative matter defeating those claims or avoiding their legal effect. *Janda v. United States Cellular Corp.*, 2011 IL App (1st) 103552, ¶ 83 (citing *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006)). When reviewing a motion to dismiss under section 2-619, a court accepts as true all well-pleaded facts in the plaintiff's complaint and all inferences that can reasonably be drawn in the plaintiff's favor. *Morr-Fitz, Inc. v. Blagojevich*, 231 Ill. 2d 474, 488 (2008). We review a dismissal under section 2-619 *de novo*. *Solaia Technology, LLC v. Specialty Publishing Co.*, 221 Ill. 2d 558, 579 (2006); *Morr-Fitz, Inc.*, 231 Ill. 2d at 488.

¶ 20    As an initial matter, we briefly address the question of whether Illinois or New York law applies to our analysis in the instant appeal. As noted, the agreements expressly provide that they are to be governed by New York law. Before the circuit court, however, Itria primarily cited Illinois law, referring to New York law only in two footnotes in its memorandum in support of its motion. Accordingly, plaintiff similarly relied on Illinois law in responding to Itria's motion, addressing New York law only at the end of his response. In its order, the circuit court applied Illinois law, pointing to the fact that the parties' arguments were primarily made using Illinois law and finding that both states' law would result in the same outcome. While Itria cites both New York and Illinois law in its opening brief on appeal, in its reply brief, it indicates that "Itria does not dispute that Illinois law applies here." Consequently, we proceed to consider the parties' arguments under Illinois law.[3] See *Zabaneh Franchises, LLC v. Walker*,

---

[3] We also observe that, to the extent that Itria relies on federal law in support of its arguments, it has forfeited such arguments on appeal, as Itria never raised the applicability of federal law below. See *Mabry v. Boler*, 2012 IL App (1st) 111464, ¶ 15 (generally, arguments not raised before the circuit court are forfeited and may not be raised for the first time on appeal); see also *Haake v. Board of Education for*

2012 IL App (4th) 110215, ¶ 14 (a party may waive its right to rely on a choice-of-law provision set forth in a contract).

¶ 21 A motion to compel arbitration raises the narrow question of whether there is an agreement between the parties to arbitrate the dispute at issue. *Guarantee Trust Life Insurance Co. v. Platinum Supplemental Insurance, Inc.*, 2016 IL App (1st) 161612, ¶ 26 (citing *Donaldson, Lufkin & Jenrette Futures, Inc. v. Barr*, 124 Ill. 2d 435, 443 (1988)). In making such a determination, a court applies a three-pronged approach: (1) if it is clear that the dispute falls within the scope of the arbitration agreement, the court must compel arbitration; (2) if it is clear that the dispute does not fall within the scope of the arbitration agreement, the court must deny the motion to compel; and (3) if it is unclear or ambiguous whether the dispute falls within the scope of the arbitration agreement, the matter should be referred to the arbitrator to determine arbitrability. *Id.*

¶ 22 An agreement to arbitrate is a matter of contract. *Salsitz v. Kreiss*, 198 Ill. 2d 1, 13 (2001). As arbitration is favored under the law, wherever possible, a court will construe an arbitration award so as to uphold its validity. *Id.* It is clear, however, that "[t]he parties to an agreement are bound to arbitrate only those issues they have agreed to arbitrate, as shown by the clear language of the agreement and their intentions expressed in that language." *Id.* An arbitration agreement "will not be extended by construction or implication." *Id.*

¶ 23 As with any other contract, the primary goal in construing an arbitration agreement is to effectuate the intent of the parties. *Guarantee Trust*, 2016 IL App (1st) 161612, ¶ 30. Where

---

*Township High School Glenbard District 87*, 399 Ill. App. 3d 121, 128 (2010) (even where federal law preempts state law, "[a]s this preemption affects only the applicable law, not the appropriate forum or jurisdiction, it is an argument that can be forfeited"). We further note that the applicability of federal law would be doubtful in any event, as federal law does not apply where the parties have agreed to arbitrate in accordance with state law and here, the agreements expressly provide that they will be governed by New York law. See *Tortoriello v. Gerald Nissan of North Aurora, Inc.*, 379 Ill. App. 3d 214, 225 (2008).

the contractual language is clear, the court must determine the parties' intent solely from the plain language of the contract. *Id.* The language must be given its plain and ordinary meaning, and the contract must be interpreted as a whole. *Id.* "The court cannot make a new contract by supplying provisions or by giving plain and unambiguous language a distorted construction." *Id.* (citing *Whaley v. American National Insurance Co.*, 30 Ill. App. 3d 32, 34 (1975)).

¶ 24   In this case, the dispute between the parties is not whether the subject matter of plaintiff's lawsuit falls within the scope of the agreements' arbitration clause but whether plaintiff is bound by the arbitration clause by virtue of his position as guarantor under the agreements. "[U]nder basic principles of contract law, only parties to the arbitration contract may compel arbitration or be compelled to arbitrate." *Carter v. SSC Odin Operating Co.*, 2012 IL 113204, ¶ 55; *Guarantee Trust*, 2016 IL App (1st) 161612, ¶ 38. Thus, for instance, an arbitration agreement is inapplicable to an agent if the principal is the party to the agreement. See, *e.g.*, *Koehler v. Packer Group, Inc.*, 2016 IL App (1st) 142767, ¶ 32 (defendants who signed an agreement in their capacity as corporate representatives and not in their individual capacities were not entitled to enforce its arbitration provision); see also *Guarantee Trust*, 2016 IL App (1st) 161612, ¶ 39. Here, Itria contends that plaintiff was a party to the arbitration clause and he was therefore bound by its terms. We disagree.

¶ 25   First, despite Itria's contentions to the contrary, plaintiff is not "clearly and unmistakably a party to the [agreements] and all provisions therein." The agreements themselves provide that they are between Itria and CIL as "Purchaser" and "Merchant." The agreements also generally distinguish among the relevant entities or individuals, referring throughout to "Purchaser," "Merchant," and "Guarantor" in setting forth their respective rights and obligations. Thus, there are a number of provisions in the agreements which apply only to Itria

and CIL, not to plaintiff. While the guaranty is part of the larger agreements, there is nothing which provides that all of the agreements' terms apply to plaintiff as the guarantor. Although plaintiff is certainly a party to portions of the agreements, we cannot agree that he is bound by "all provisions therein" as Itria contends. Indeed, there are instances, including on the first page of the agreements, where the agreements specifically distinguish between the "parties" and the "guarantor."

¶ 26    More specifically, even within the arbitration clause itself, it is not clear that the guarantor is considered one of the "parties" to which the clause refers. The clause indicates that "each party agrees to confidential arbitration of all disputes and claims arising out of or relating to this Agreement." The clause then, however, indicates that if "the parties" do not reach a resolution within 30 days of the written notice of intent to arbitrate, "Purchaser and Merchant agree that the claim will be resolved by a final and binding arbitration proceeding." The clause further provides that "Purchaser and Merchant agree that, except as expressly otherwise provided herein, (i) arbitration is the required and exclusive forum for the resolution of all claims and (ii) to the fullest extent permitted by law, Purchaser and Merchant are each permanently giving up their right to a jury trial in any forum and the right to a judicial forum for the resolution of any and all claims." Nowhere within the arbitration clause does it provide that the guarantor agrees to any of the above.

¶ 27    We also observe that the agreements do not specifically include the guarantor's agreement to the arbitration clause. Section 16, which contains the guaranty, provides that the guarantor "acknowledges that such guarantor has *read and fully understands* the provisions of this Agreement" (emphasis added), including the arbitration clause. In the next subsection, however, the guarantor "*acknowledges and hereby reaffirms* the waivers specified in" sections

11

1 and 14 of the agreements (emphasis added). In other words, the guarantor is required to expressly consent to the waivers contained in the agreements, but is only required to indicate his understanding as to the general provisions of the agreements.

¶ 28 A guaranty contract is to be strictly construed in favor of the guarantor "such that the guarantor is afforded the benefit of any doubt that arises from the contract language." *T.C.T. Building Partnership v. Tandy Corp.*, 323 Ill. App. 3d 114, 118-19 (2001). As such, "the liability of a guarantor should not be extended beyond the precise terms of its undertaking." *Id.* at 118. In this case, the language of the agreements does not clearly encompass plaintiff as a party to the arbitration clause. Accordingly, the circuit court properly denied Itria's motion to compel arbitration and to dismiss the complaint.

¶ 29 We are unpersuaded by Itria's suggestion that we rely on a New York trial court decision interpreting the same provision of an identical agreement. First, a trial court decision from a foreign jurisdiction bears no precedential value in this court. See *Skipper Merine Electronics, Inc. v. United Parcel Service, Inc.*, 210 Ill. App. 3d 231, 242 (1991). More importantly, the case is factually distinguishable. In that case, the guarantors did not challenge whether they were covered by the arbitration clause—the only dispute was whether the court or the arbitrator should determine in the first instance if the agreements were usurious in violation of New York law. See *Vaidya v. Itria Ventures LLC*, No. 651169/2024, 2024 WL 3634986 (N.Y. Sup. Aug. 2, 2024). We therefore find that case wholly irrelevant to the analysis in the instant appeal.

¶ 30 CONCLUSION

¶ 31 The circuit court properly denied Itria's motion to compel arbitration and to dismiss, as plaintiff was not clearly a party to the arbitration clause contained in the agreements.

¶ 32 Affirmed.